Arthur Henry CHESTER, and Manitowoc (U.K.) Ltd., a foreign corporation, Plaintiffs,

v.

MARITIMA del LITORAL S.A., a foreign corporation, Defendant.

Civ. A. No. 80–C–1072.

United States District Court, E.D. Wisconsin.

Nov. 22, 1983.

On Motion for Reconsideration, May 14, 1984.

Ross F. Plaetzer, Davis & Kuelthau, S.C., Milwaukee, Wis., for plaintiff.

Ben G. Slater, Cook & Franke, Milwaukee, Wis., for defendant.

## DECISION

TERENCE T. EVANS, District Judge.

This is an admiralty case which arose out of damage to certain cargo being shipped from Manitowoc, Wisconsin, to Loch Kishorn, Scotland. Seawater, spilling onto the deck of the freighter on which the cargo was shipped, apparently damaged four packages of parts which were accompanying three large cranes to Scotland. The plaintiffs are the consignee of the cargo, Manitowoc (U.K.) Ltd., and certain underwriters at Lloyds of London who insured the shipment. The underwriters became subrogated to the rights of Manitowoc after settling a claim with Manitowoc for the damaged cargo. The defendant is a Spanish corporation which owns the S.S. INAGUA ESPANA, the vessel which was carrying the cargo when it was damaged.

The case is before me on the plaintiffs' motion for partial summary judgment. The plaintiffs are attempting to neutralize defenses raised in Maritima's answer, namely, that its liability is limited to $500 per package (*See* Answer ¶ 23, Maritima's Eighth Affirmative Defense), and that its liability is precluded because the plaintiffs, who knew the goods were to be shipped on deck, assumed any risk of damage to them· (*see* Answer ¶ 25, Maritima's Tenth Affirmative Defense).

Because questions arose during my review of the briefs on the pending motions, oral arguments were entertained on November 21, 1983. I construe the arguments of Ben Slater, attorney for the defendant, to be a request that the plaintiffs' motion be denied and that summary judgment be in fact entered for the defendant. I construe the arguments of Ross Plaetzer and James E. Braza, counsel for the plaintiffs, to be that their motions be granted and the defendant's requests denied. As so construed, I believe that the defendant must prevail and that the complaint must be dismissed.

In ¶ 8 of its answer, the defendant states that the bill of lading covering the shipment in question provided that:

"... neither the carrier nor the ship shall be liable for any loss or damage whatsoever howsoever caused to goods which are or were carried on the deck of the vessel; upon information and belief, that the said shipment of goods was carried on deck said vessel with the knowledge, approval, consent and permission of both said shipper and said consignee".

The exact language in the bill of lading used in this case stated "... neither the carrier nor the ship shall be liable for any loss or damage whatsoever however caused to goods which are hereby stated as being carried on deck and which are so carried."

This condition came as no surprise. All understood that the vessel involved was not built for below-deck stowage. *See* Patrick D. Guinan Affidavit, Ex. A; C, ¶ 19, and the admissions made during oral argument.

The S.S. INAGUA ESPANA is a class of ship designated as a "Ro-Ro", which is shorthand for "roll-on-roll-off". The design of the ship permits almost all of its cargo to be driven onto and off of the vessel intact. It is not equipped with underdecks, holds or other cargo areas other than its main deck, which is open to the weather. Simply stated, the ship is little more than a floating shelf, on which goods sit for their entire journey. The designation "Ro-Ro" is also found on the bill of lading.

The Carriage of Goods by Sea Act of 1936 (46 U.S.C. § 1304(5)) (COGSA), ordinarily limits a vessel's liability for damages to goods shipped by sea. COGSA provides that:

Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful mon-

ey of the United States ... unless the nature and value of such goods have been declared by the shippers before the shipment and inserted in the bill of lading.

Before reaching the issue of whether the limitations apply, however, it must be determined whether COGSA even applies. I do not believe that it does. Section 1304(5) applies to "any loss or damage to or in connection with the transportation of goods". "Goods" is defined in § 1301(c) to exclude "live animals and cargo which by the contract of carriage is stated as being carried on deck and is so carried". The contract of carriage (the bill of lading here) stated, and everyone knew, that the vessel was a "Ro-Ro". Accordingly, the cargo had to be stored on the deck. It could not have been stored in any other place. Therefore, I conclude that the defendant has no liability at all in this case and that the complaint must be dismissed.

If the blanket disclaimer of liability were not applicable, I would be required to move to the next question and decide whether or not the $500.00 limitation applied. My decision finding no liability makes it unnecessary for me to consider the second question, but because it has been extensively briefed and argued I will discuss it.

The parties could have chosen to vary the liability limitations of COGSA. *See General Motors Corp. v. Moore-McCormack Lines, Inc.*, 451 F.2d 24, 25 n. 1 (2d Cir.1971); *General Electric Co. v. M.V. Lady Sophie*, 458 F.Supp. 620, 622 (S.D.N.Y.1978). The bill of lading does not appear to evidence any such intent. Therefore, at first blush, the limitation appears to apply.

■ In order, however, for a carrier to take advantage of the $500 limitation, it must give the shipper a fair opportunity to declare a higher value and pay a correspondingly higher rate. *Tessler Brothers (B.C.) Ltd. v. Italpacific Line*, 494 F.2d 438 (9th Cir., 1974). In this case I believe that an issue of fact exists as to whether Maritima failed to provide a fair opportunity to

the shippers to protect themselves against the loss of the goods which were shipped.

■ In the first place, Maritima gave little notice of the fact that it would rely on the $500 limit. Although courts have held that reciting the language of § 1304(5) in the bill of lading is prima facie evidence that the carrier gave such an opportunity, mere reference to COGSA without explicit insertion of its terms into the contract language is generally not sufficient. *See Komatsu, Ltd. v. States S.S. Co.*, 674 F.2d 806, 810 (9th Cir.1982). As the court in *Pan American World Airways, Inc. v. California Stevedore and Ballast Co.*, 559 F.2d 1173 (9th Cir.1977) explained, it goes "beyond the bounds of commercial realism" to assume that shippers are made aware of the provisions of COGSA by mere reference to it in the bill of lading, without COGSA'S terms themselves present on its face. *Id.* at 1177.

■ Even if the shippers had knowledge of the terms of COGSA, a question of fact exists as to whether the bill of lading gave them a fair opportunity to declare a higher value and pay a correspondingly higher freight rate. Maritima argues that the plaintiffs had a fair opportunity to declare a higher value because there was room on the front of the bill of lading in the space made available for describing the goods to be shipped. Without being designated as an area for declaring the value of the goods, this "free space" cannot, as a matter of law, constitute a fair opportunity to declare a higher value. *See General Electric* at 623. Maritima also argues that had it offered higher rates, the plaintiffs would have chosen not to pay them. Maritima relies on the plaintiffs' statement that they had already fixed the cost of shipment at $200,000 and could not go any higher. This is a question of fact.

There is a genuine issue of fact as to whether the shipper was given a fair opportunity to choose a higher liability and pay a correspondingly greater charge. Therefore, the motion for partial summary judgment against Maritima's Eighth Affirmative Defense would have been denied and

left for trial. Similarly, the "assumption of risk" issue raised in the Tenth Affirmative Defense would also be left for trial, as genuine issues of fact exist in the case.

For the foregoing reasons, the defendant's motion for summary judgment is GRANTED and the complaint is DISMISSED. The plaintiffs' motions for partial summary judgment are DENIED. SO ORDERED.

## DECISION

### On Motion For Reconsideration

This is an admiralty case involving claims for goods which were stowed on an open deck and damaged by seawater. The plaintiffs' case was dismasted on summary judgment, but they have commissioned a fleet of new arguments in pursuit of reconsideration. Unfortunately, the prevailing legal winds are still blowing in the same direction.

In resolving the summary judgment motion against the plaintiffs, I found that the defendant was not liable for any damages. Two reasons anchored that decision: First, the bill of lading covering the plaintiffs' goods clearly and unquestionably foreswears liability for their loss. It provides on its first page that "Neither the carrier nor the ship shall be liable for any loss or damage whatsoever however caused to goods *which are hereby stated as being carried on deck and which are so carried*" (emphasis added). Second, there was no dispute about the central facts of the case: It was admitted in the submissions supporting the plaintiffs' original motion and conceded at oral argument that everyone concerned knew that the goods were to be carried on deck. Indeed, it was also known that the ship was not built with enough room to store the goods below deck. Thus, the plaintiffs' litigating voyage had come to a deep and watery end.

However, like the Phantom Dutchman, this case has sailed once again into my harbor. The plaintiffs request that I vacate the judgment dismissing their action. Three reasons are given suggesting that I may have "lost my bearings" in reaching my earlier decision:

(1) Liability exists under the terms of the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1300, *et seq.* COGSA applies despite the fact that the cargo was carried on deck because, according to the plaintiffs, "there was no stipulation in the bill of lading that the cargo would be carried on deck."

(2) The parties agreed to be bound to COGSA's liability provisions no matter where the goods were stowed.

(3) To the extent COGSA does not apply, then the rights of the parties are governed by the Harter Act, 46 U.S.C. § 190–195, the terms of which void clauses like the one quoted above.

I find none of these arguments persuasive.

### I.

The plaintiffs' first argument founders for a poorly laid keel. Its major premise, most succinctly stated on page 8 of the plaintiffs' Brief in Support, is unsound:

It is agreed by everyone that there is no specific statement anywhere in the bill of lading describing the goods as being carried on deck.

■ The plaintiffs must not have heard the foghorns which were blaring at them during the oral argument and in my earlier decision. The portion of the bill of lading quoted and underscored above constitutes the simple, conspicuous stipulation/declaration/statement the plaintiffs are clamoring for. This statement is straightforward and fundamentally reasonable for a ship of the INAGUA ESPANA's design; it is as plain and proper as if it were flying from the ship's masthead or chiseled into its prow. This masthead clause, as it were, makes clear not only that the shipper would refuse liability for goods stored on deck but also that the particular goods which this bill of lading covers were indeed being carried on deck.

The plaintiffs seem to misconstrue the import of the masthead clause. From their argument, it appears that they view it merely as an affirmation of some legal

duty to declare somewhere else in the bill of lading that the goods are carried on deck, and that therefore no liability for their loss will be assumed. See Br. in Support at 4; hereinafter Br. at _____.

Not so. COGSA does not require anything more than what the bill declares. In fact, COGSA § 1301(c), which the plaintiffs cite as authority for their argument [1], excludes deck cargo from the Act's purview where the proper declaration is made. The masthead clause is itself the unambiguous declaration which "cleans" the bill of lading.

The masthead clause effectively deep sixes all the public policy arguments which surface in the plaintiffs' motion. The clause demonstrates a scrupulous adherence to the requirements of COGSA (Br. at 5); in fact, it tracks the language of § 1301(c) precisely, thereby exempting Maritima from COGSA's requirements. It battens down the hatch left open in the bill of lading at issue in *Svenska Traktor Aktiebolaget v. Maritime Agencies (Southhampton), Ltd.*, (1953) 2 All E.R. 570 (Q.B. D.), *cited* in Br. at 6–7. The clause protects the negotiability of bills of lading (See Br. at 10–11), but only to the extent subsequent holders are careful to read the bills and protect themselves. Maritima's masthead clause should have tipped off subsequent holders of the bill of lading (the plaintiffs) that the vulnerable cargo was treated to the otherwise healthy aspects of an open air sea voyage.

The plaintiffs' attempts to circumnavigate the implications of the masthead clause lead them to steer wildly about on one 180° course after another. In their submissions in support of their original motion for summary judgment, as well as at the oral argument, the plaintiffs conceded the substance of the affidavit testimony—that everyone knew that the goods were to be carried on deck. However, locked in irons by the winds of summary judgment, the plaintiffs now contend that there is "no evidentiary foundation" for that fact.

Similarly, with respect to the INAGUA ESPANA's design, the plaintiffs initially set their sails on this course: A "Ro/Ro ... carries most, and sometimes all, of its cargo on a single open deck ... the Inagua Espana is a one-deck vessel, and has no underdecks or holds or other cargo areas except that deck". Br. in Support of Motion for Summary Judgment at 5. Their full-rigged argument even included a picture of the INAGUA ESPANA herself, a diagram which depicts one single unprotected deck, just above the waterline, with cargo stacked on it. See Plaetzer Affidavit, Ex. B. But, in moving for reconsideration, they hove to and took a completely different tack: "Cargo carried on such a vessel is thus not always, *and most often not usually*, carried on deck and exposed to the elements and sea." Br. at 10 (emphasis in original). Whichever is the case is immaterial; no matter how much room might have been available below deck, the masthead clause resolves all doubts about where goods would be stowed.

The plaintiffs' attempts to recast the facts are unpersuasive. Indeed, they lead only to the suspicion that had plaintiffs' counsel been at the helm of the INAGUA ESPANA, their sense of direction may have prevented the goods from reaching Scotland in the first place, seawater-soaked or no.

## II.

■ The second reason offered in favor of vacating my decision is that a later clause in the bill of lading overrides the masthead clause. Paragraph 2 of the bill of lading states that "The Hague Rules ... as enacted in the country of shipment shall apply to this contract." The Hague Rules were adopted in the United States as part of COGSA. I find the argument unpersuasive. Indeed, the hole in this argument takes on water faster than it can be bailed.

---

1. Section 1301(c) provides:
   The term "goods" includes goods, wares, merchandise, and articles of every kind, whatsoever, except live animals and cargo which by the contract of carriage is stated as being carried on deck and is so carried.

The plaintiffs' argument is that the parties expressly bound themselves to the provisions of COGSA, including its liability provisions. As the plaintiffs point out, § 1312 of COGSA makes each and every provision of COGSA apply as fully as if the agreement recited each explicitly. However, just when you thought it was safe to put the argument back in the water, the hole in § 1301(c) opens up again. If § 1312 requires that COGSA applies *in toto*, § 1301(c) in particular must also apply. Section 1301(c) excludes deck cargo from the type of goods to which COGSA applies in the first place. Since § 1312 cannot close what § 1301(c) leaves open, the blanket statement in ¶ 2 of the bill of lading cannot make Maritima liable.

The plaintiffs' further argument that the use of a clause refusing liability for damage to goods carried on deck violates § 1303(8) of COGSA is circular. That provision prevents a carrier from relieving or lessening his liability for "goods ... as provided in this Act". As explained above, § 1301(c) of COGSA explicitly excludes deck cargo from the category of "goods" to which the Act's provisions apply, thereby neutralizing § 1303(8).

### III.

The third argument in support of reconsideration appears now for the first time, like a winged keel unveiled just when the race has come to an end. The plaintiffs argue that even if the provisions of COGSA are not applicable to this case, the defendants are still liable under the provisions of the Harter Act of 1893, 46 U.S.C. § 190, *et seq*. If the Harter Act applied to this case, it would make it unlawful for Maritima

> to insert in any bill of lading ... any clause, covenant, or agreement whereby it ... shall be relieved from liability for loss or damage ... Any and all words or causes of such import inserted in bills of lading or shipping receipts shall be null and void and of no effect.

46 U.S.C. § 190.

■ This call to abandon ship in favor of the Harter Act does not change the outcome of this case. In the first place, the Harter Act may not apply. It generally applies only during the periods before goods are loaded on ship or after they are discharged. *See Firestone Tire & Rubber Co. v. Almacenes Miramar, Inc.*, 452 F.Supp. 670, 671 (D.P.R.1978); *see also* 46 U.S.C. § 1311.

■ Second, although some courts have applied the Harter Act in cases where goods were in transit, they have brought it into play only to aid the enforcement of COGSA itself. Thus, the Harter Act has been applied only where it is necessary to avoid "a result strictly contrary to the one reached by American courts interpreting similar language in the comparable American statute, namely, The Carriage of Goods by Sea Act". *Blanchard Lumber Co. v. SS ANTHONY II*, 259 F.Supp. 857, 865 (S.D.N.Y.1966), cited in Br. at 18–19. Judge Levet observed in *Blanchard* that both the Harter Act and COGSA reflect the same policies. *Id.* Therefore, the Harter Act does not proscribe any limitation of liability which it is the clear policy of COGSA to permit. Since COGSA clearly refrains from regulating deck cargo carried under the circumstances of this case, no different outcome is possible.

Furthermore, both the Harter Act and COGSA were conceived out of a maritime tradition which has had little sympathy for shippers who agree to ship their possessions on deck. In *The CARRISO*, 27 F.2d 1015 (N.D.Cal.1928), the court found that a clause in the bill of lading which provided that the ship had "liberty to carry the goods and any other goods on deck or under deck" was "valid, and not in conflict with the Harter Act" because

> [i]t accords with an old maritime rule that cargo may be carried on deck with the consent of the shipper. *Lawrence v. Minturn*, 17 How. (58 U.S.) 100 ... Such stipulation is not expressly barred by terms of the statute. Being valid under American law before the Act, and not expressly covered, the clause giving the ship liberty to stow cargo on deck is valid.

*The CARRISO* was affirmed on appeal by the Court of Appeals for the Ninth Circuit in *Davidson v. Flood Bros.,* 30 F.2d 279 (9th Cir.1929). This traditional treatment of on deck stowage has made the long voyage to the present before steady winds. In the face of this tradition, the plaintiffs' argument is stymied.

### IV.

The plaintiffs bought an agreement to ship vulnerable goods on an open deck, an agreement which reflects the parties' understanding that the goods were so carried and cautions that no liability for their loss will be accepted. In the face of shipping laws which exclude this kind of shipping from their purview, the plaintiffs are, in short, without a paddle. For these reasons, therefore, their motion for reconsideration is DENIED.