DB TRADE INTERNATIONAL, INC., Plaintiff,

v.

ASTRAMAR, Mitsui Engineering & Shipbuilding Co., Ltd., a/k/a Mitsui Zosen K.K., et al., Defendants.

No. 82 C 6283.

United States District Court, N.D. Illinois, E.D.

Aug. 30, 1984.

---

Abraham Diamond, Steven C. Weiss, Michael A. Snyder, S. Michael Ritter, Snyder & Gerard, Chicago, Ill., for plaintiff.

Geoffrey G. Gilbert, Robert D. Barnes, McBride & Baker, Harold Witsaman, Ray, Robinson, Hannine & Carle, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

In this action DB Trade International, Inc. ("DB Trade") seeks to recover approximately $99,000, plus costs and fees, for loss sustained when a shipment of steel from Argentina arrived in damaged condition. DB Trade's claim is an admirality claim within this Court's jurisdiction pursuant to 28 U.S.C. § 1333, and also 28 U.S.C. § 1337. Plaintiff and two of the defendants have filed cross-motions for partial summary judgment on the issue of damages, the matters currently before the Court.

In connection with these motions, the parties have submitted a stipulation of uncontested facts. The defendants maintain that plaintiff's recovery is limited to the $11,500 by the Carriage of Goods by Sea Act ("COGSA"). 46 U.S.C. § 1304(5). For the reasons set forth below, the defendants are not entitled to the protection of the COGSA limitation of liability provision. Accordingly, the defendants' motion is denied and the plaintiff's motion is granted.

## FACTS

Since January, 1980, plaintiff DB Trade has been engaged in the business of importing steel and other products from overseas. On September 10, 1981, DB Trade contracted to purchase cold rolled steel from Columbia International Investments and also contracted to resell the steel to National Material Corporation in Illinois. Propulsora Siderurgica SAIC ("Propulsora") manufactured the steel in Argentina and made arrangements for its shipment from Argentina to Chicago. Propulsora arranged for shipment by engaging Fletamar S.A.C., a local broker and shipping agent.

The steel was loaded on board the ocean going vessel Scandinavia Maru at Ensenda, Argentina between October 16 and 23,

1981. The Scandinavia Maru is owned by defendants Mitsui Engineering & Shipbuilding Co., Ltd. ("Mitsui") and Showa Aircraft Industry Co., Ltd. ("Showa") who had chartered the vessel to Fuji Marine Co., Ltd. ("Fuji"). Fuji, in turn, subchartered the vessel to its vessel managing subsidiary Fuji Kisen Kaisha, Ltd. ("Fuju-Kisen"), who subchartered the vessel to Cari Bulk Carriers, A.P.S. of Copenhagen, Denmark, who, in turn, subchartered the vessel to defendant Astramar CIA Argentina de Navegacion S.A.C. ("Astramar") for the voyage from Argentina to Chicago.

After loading the steel on board, the ship's mate (an employee of Fuji) prepared and signed receipts for the goods. Based on these receipts, Fletamar then prepared a cargo manifest and signed the bills of lading issued by Astramar. Under the customary practice, the carrier (Astramar) provides the shipper (Fletamar) with blank form bills of lading. The shipper completes the forms with the requested information, signs the bills and returns them to the carrier. The parties have stipulated that Fletamar and Astramar followed this customary practice. Although Astramar's bill of lading form does not contain a specific space labelled "valuation" in which the shipper may insert the actual value of the shipment, the form also has no restriction prohibiting the shipper from including such a valuation in its description of the goods. The forms used here contain the following provision on their face:

*Paramount Clause*

This Bill of Lading shall have effect subject to the provisions of any legislation relating to the carriage of goods by sea which incorporates the rules relating to Bills of Lading contained in the International Convention, dated Brussels 25th August, 1924, and any modification thereof which is compulsorily applicable to the contract of carriage herein contained.

The COGSA is the legislation in this country which incorporates these treaty provisions. It contains the following section on limitations of liability:

(5) Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding *$500 per package* lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, *unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.* This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: Provided, that such maximum shall not be less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained.

Neither the carrier nor the ship shall be responsible in any event for loss or damage to or in connection with the transportation of the goods if the nature or value thereof has been knowingly and fraudulently misstated by the shipper in the bill of lading.

46 U.S.C. § 1304(5) (emphasis added). Neither DB Trade, Propulsora nor Fletamar requested that a declaration of actual value be inserted in the bills of lading. DB Trade's marine cargo insurer, Employers Insurance of Wausau, and the underwriter, American Marine Underwriters, Inc. also failed to request a declaration of actual value. DB Trade brought this action after twenty-three of the steel coils arrived in Chicago in damaged condition.

## DISCUSSION

If applicable, the COGSA limitation of liability provision would cap DB Trade's recovery at $11,500 (23 × $500), as the parties do not dispute that each coil is a "package" as defined in § 1304(5). Defendants Showa and Mitsui contend that the

§ 1304(5) limitation applies, since the shipper failed to include a declaration of actual value in the bills of lading. On its face, the statute appears to mandate this result. However, the courts have added a gloss to the statute, requiring a carrier who seeks the COGSA's protection to provide its shipper "a fair opportunity to chose between a higher or lower liability by paying a correspondingly greater or lesser charge." *Komatsu, Ltd. v. States S.S. Co.*, 674 F.2d 806, 809 (9th Cir.1982) (citations omitted). Accordingly, the issue presented here is whether Astramar afforded DB Trade and its shipper, Fletamar, a "fair opportunity" to avoid the COGSA limitation.

The Seventh Circuit has not spoken to the issue of what constitutes such a fair opportunity. In addition, the Fifth and Ninth Circuits have taken conflicting views of the meaning of "fair opportunity." In a recent line of cases, the Ninth Circuit has adopted the following view:

> The carrier bears the initial burden of proving 'fair opportunity.' Normally, the carrier can meet this initial burden by showing that the language of COGSA Section 4(5) [42 U.S.C. § 1304(5)] is contained in the bill of lading. Such an express recitation of section 4(5) is prima facie evidence that the shipper was given a fair opportunity to choose a higher liability. The burden of disproving 'fair opportunity' is then shifted to the shipper. (citations omitted).

*Nemeth v. General S.S. Corp., Ltd.*, 694 F.2d 609, 611 (9th Cir.1982). *See also Komatsu*, 674 F.2d at 809; *Pan American World Airways, Inc. v. California Stevedore & Ballast Co.*, 559 F.2d 1173 (9th Cir.1977). However, under the Ninth Circuit's view mere incorporation by reference of the terms of section 1304(5), as in Astramar's form bill of lading, does not constitute a prima facie showing by the carrier of "fair opportunity." *Komatsu*, 674 F.2d at 810. Nor does a published tariff which includes increased freight charges for shipments where actual values are declared, constitute evidence that the carrier afforded the shipper a "fair opportunity" to declare actual value. 674 F.2d at 811.

The Fifth Circuit has expressly rejected the Ninth Circuit's position, holding that such a published tariff, when combined with a paramount clause as is present here, gives the shipper constructive notice of the COGSA loss limitation and its right to declare actual value. *Wuerttembergische v. M/V Stuttgart Express*, 711 F.2d 621 (5th Cir.1983) (*per curiam*); *Brown & Root, Inc. v. M/V Peisander*, 648 F.2d 415, 423–25 (5th Cir.1981). While, as DB Trade notes, no published tariff is involved in this action, the Fifth Circuit position on constructive notice may also extend to a paramount clause which incorporates the COGSA by reference.

■ Nevertheless, the Ninth Circuit's reasoning is more persuasive. Neither of the Fifth Circuit's decisions adequately address the key issue in determining whether the shipper has had a "fair opportunity" to declare the actual value of its shipment. "The issue is whether this reference [the paramount clause] is *sufficiently explicit* to make a shipper aware that a package limitation exists. *Komatsu*, 674 F.2d at 811 (emphasis added). Unless the bill of lading expressly states that the $500 limitation of liability applies, the shipper is aware only of the fact that the COGSA applies, not that some limitation of liability lurks somewhere in the statute. Under a bill of lading which merely incorporates the Hague Convention by reference, the shipper must determine what, if any, statute has been enacted then, search the statute for any limitation of liability, steps that are avoided by setting forth notice of a limitation of liability in the bill of lading. *General Electric Co. v. M.V. Lady Sophie*, 458 F.Supp. 620, 622 (S.D.N.Y.1978).

As the Second Circuit has noted in two somewhat different contexts, "In interpreting § 4(5), courts must therefore take a critical look at any proposed construction of that section that would reduce a carrier's liability below reasonable limits." *Mitsui & Co., Ltd. v. American Export Lines, Inc.*, 636 F.2d 807, 815 (2nd Cir.1981) (Friendly, J., discussing the definition of

"package" in § 1304(5)). *See also General Electric Co. v. S.S. Nancy Lykes,* 706 F.2d 80, 87 (2nd Cir.1983) (discussing whether or not § 1304(4) limitation applies to loss occasioned by carrier's unreasonable deviation). Requiring the carrier to indicate explicitly that a $500 per package limitation of liability applies unless the shipper takes some action is consistent with this general skepticism of the carrier's entitlement to § 1304(5) protection.

 To make a prima facie showing of "fair opportunity," the carrier need only put the shipper on notice of § 1304(5) by including some express statement that a liability limitation operates unless the shipper requests otherwise. Since Showa and Mitsui cannot carry their initial burden of demonstrating that Astramar afforded Fletamar a fair opportunity to declare the actual value of the shipment they cannot utilize § 1304(5) to limit their liability.

IT IS THEREFORE ORDERED that

(1) Plaintiff's motion for partial summary judgment is granted and the defendants' cross-motion for partial summary judgment is denied.

(2) A status hearing is set for September 14, 1984 at 9:00 a.m., at which time a date for the close of discovery and submission of the pretrial order will be set.