**CINCINNATI MILACRON,
LTD., Appellant,**

**v.**

**M/V AMERICAN LEGEND, her engines,
boilers, etc., and United States Lines,
Inc., Appellees.**

No. 85–1183.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 10, 1985.

Decided Feb. 25, 1986.

James D. Skeen (David W. Skeen, Constable, Alexander, Daneker & Skeen, Baltimore, Md., on brief), for appellant.

John H. West, III (Roann Nichols, Ober, Kaler, Grimes & Shriver, Baltimore, Md., on brief), for appellees.

Before PHILLIPS and ERVIN, Circuit Judges, and McMILLAN, District Judge for the Western District of North Carolina, sitting by designation.

ERVIN, Circuit Judge:

In this admiralty case, Cincinnati Milacron, Ltd., appeals the ruling of the district court which limited the liability of United States Lines, Inc. (U.S. Lines), for cargo damage to $1,000 under § 4(5) of the Carriage of Goods by Sea Act (COGSA)[1], codified at 46 U.S.C. § 1304(5) (1982). Because U.S. Lines failed to carry its burden of proving that it afforded Cincinnati Milacron a fair opportunity to avoid the § 1304(5) liability limitation, we reverse and remand for a determination of actual damages.

## I.

In February 1982 Cincinnati Milacron shipped two milling machines from Felixstowe, England, to Baltimore, Maryland, on board the M/V AMERICAN LEGEND, a vessel owned by U.S. Lines. The machines were damaged in transit. Cincinnati Milacron claimed that U.S. Lines was liable for approximately $80,000 damages. U.S. Lines claimed that its liability was limited to $1,000 by the $500 per package limitation of § 1304(5).[2]

When the machines were loaded, U.S. Lines issued its short form bill of lading to Cincinnati Milacron. The short form incorporated by reference COGSA[3] and U.S. Lines' long form bill of lading.[4] COGSA, of course, contained the liability limitation of § 1304(5). U.S. Lines' long form bill of lading also contained language substantially similar to § 1304(5).[5] U.S. Lines' tariff,

---

1. 46 U.S.C. §§ 1300–1315 (1982).

2. Section 1304(5) provides in part:

    Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading shall be prima facie evidence, but shall not be conclusive on the carrier.

3. Paragraph 3 of the reverse side of the short form bill of lading provided in part:

    This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act.... All the provisions of the Act ... are deemed to be incorporated herein....

4. Paragraph 4 of the reverse side of the short form bill of lading provided in part:

    It is agreed that the receipt, custody, carriage, delivery and transshipping of the goods are subject to the terms appearing on the face and back hereof and also to the terms contained in the carrier's regular long form bill of lading currently used in this service, including any clauses presently being stamped or endorsed thereon which shall be deemed to be incorporated in this bill of lading....

5. Paragraph 24 of the long form bill of lading provided in part:

    In the event of any loss or damage to goods exceeding in actual value $500 per package lawful money of the United States, or, in case of goods not shipped in packages, per customary freight unit, the value of the goods shall be deemed to be $500 per package or per

on file with the Federal Maritime Commission, incorporated by reference the long form bill of lading and contained language similar to § 1304(5). The short form bill of lading, the only document received by Cincinnati Milacron, did not contain any language similar to § 1304(5).

In June 1983 Cincinnati Milacron sued U.S. Lines for damages in the U.S. District Court for the District of Maryland. The parties filed motions for partial summary judgment, based on the documents described above, on the issues of whether the limitation of § 1304(5) was applicable and whether the machines constituted packages under COGSA. After an initial ruling to the contrary, the district judge granted partial summary judgment for U.S. Lines and ruled that the § 1304(5) limitation applied. On both occasions, the district judge determined that the machines were packages.[6] Accordingly, he ordered that in the event U.S. Lines was found liable, its liability would be limited to $1,000, $500 for each machine. U.S. Lines agreed to the entry of a consent judgment against it; Cincinnati Milacron appealed.

### II.

Under COGSA,[7] a carrier's liability for damage to cargo is limited to $500 per package "unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading." 46 U.S.C. § 1304(5). While the language of § 1304(5) could be interpreted to make the operation of the limitation rest solely on the conduct of the shipper, it has

not. Before the limitation is effective, "the carrier must give the shipper 'a *fair opportunity* to choose between higher or lower liability by paying a correspondingly greater or lesser charge.'" *Tessler Brothers (B.C.) Ltd. v. Italpacific Line,* 494 F.2d 438, 443 (9th Cir.1974) (emphasis added), quoting *New York, New Haven & Hartford Railroad Co. v. Nothnagle,* 346 U.S. 128, 135, 73 S.Ct. 986, 990, 97 L.Ed. 1500 (1953). *Accord Wuerttembergische v. M/V STUTTGART EXPRESS,* 711 F.2d 621, 622 (5th Cir.1983); *D.B. Trade International, Inc. v. Astromar,* 592 F.Supp. 1215, 1218 (N.D.Ill.1984); *Chester v. MARITIMA del LITORAL, S.A.,* 586 F.Supp. 192, 195 (E.D.Wisc.1983); *Vegas v. Delta Steamship Lines, Inc.,* 1982 AMC 595, 597 (S.D.Fla.1980); *General Electric Company v. M.V. LADY SOPHIE,* 458 F.Supp. 620, 622 (S.D.N.Y.1978); *Bumble Bee Seafoods v. S.S. KIKU MARU,* 1978 AMC 1586, 1588 (D.Md.1978).

The carrier bears the initial burden of proving fair opportunity. If a fair opportunity can be gleaned from the language of the bill of lading, then the bill of lading is prima facie evidence of fair opportunity and the carrier has met his burden of proof. The burden of proving that a fair opportunity did not exist then is shifted to the shipper. *See Komatsu, Ltd. v. States Steamship Company,* 674 F.2d 806, 809 (9th Cir.1982). *Accord D.B. Trade International,* 592 F.Supp. at 1218; *Bumble Bee Seafoods,* 1978 AMC at 1588.

customary freight unit as the case may be, and the carrier's liability, if any, shall be determined on the basis of value of $500 per package or per customary freight unit, unless the nature of the goods and a higher value shall be declared by the shipper in writing before shipment and inserted in this bill of lading.

In the event of a higher value being declared by the shipper ... and extra freight paid thereon if required, the carrier's liability ... shall be determined on the basis of such declared value....

As to the availability of the long form bill of lading, paragraph 1 of the short form provided: "Copies of the carrier's regular long form bill of

lading ... are available from the carrier on request and may be inspected at any of its offices or its agents [sic] offices."

**6.** Because we reverse the district court and find that the § 1304(5) limitation is not applicable to this case, we do not reach the question of whether the machines were packages under COGSA.

**7.** The shipping contract between Cincinnati Milacron and U.S. Lines was subject to COGSA. *See* 46 U.S.C. §§ 1300, 1312 (1982) ("This chapter shall apply to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade." 46 U.S.C. 1312).

All jurisdictions that have considered the question appear to agree that a recitation in the bill of lading of the limited liability language of § 1304(5) is prima facie evidence of fair opportunity. *See Komatsu*, 674 F.2d at 809; *Wuerttembergische*, 711 F.2d at 622; *D.B. Trade International*, 592 F.Supp. at 1219; *Vegas*, 1982 AMC at 596; *General Electric Company*, 458 F.Supp. at 622; *Bumble Bee Seafoods*, 1978 AMC at 1588–89. It is not settled, however, whether the carrier may satisfy its burden of proof by incorporating the language of § 1304(5) into the bill of lading by reference, for example, to COGSA generally. If the carrier could so satisfy his burden, an incorporation by reference of COGSA in the bill of lading would be constructive notice to the shipper of the language of § 1304(5) and thus effect a fair opportunity. This case presents an analogous question: whether a short form bill of lading, which incorporates a long form bill of lading containing § 1304(5) language, would be constructive notice and effect a fair opportunity. This circuit has not addressed such questions. The circuits which have addressed them are in conflict.

The Ninth Circuit has rejected the constructive notice approach and has ruled that merely incorporating by reference COGSA's provisions into the bill of lading is not prima facie evidence of fair opportunity. *See Komatsu*, 674 F.2d at 809 (also ruling that a tariff on file with the Federal Maritime Commission is not prima facie evidence of fair opportunity, *see id.* at 811), citing *Pan American World Airways, Inc. v. California Stevedore and Ballast Co.*, 559 F.2d 1173 (9th Cir.1977). *Accord D.B. Trade International*, 592 F.Supp. at 1218; *Chester*, 586 F.Supp. at 195; *General Electric Company*, 458 F.Supp. at 622; *Bumble Bee Seafoods*, 1978 AMC at 1588–89. While the Ninth Circuit has not considered whether the issuance of a short form bill of lading, which incorporates by reference a long form bill of lading containing § 1304(5) language, is prima facie evidence of fair opportunity, it would likely reject this approach. Implicit in the Ninth Circuit rule is that § 1304(5) language must ap-

pear on the face of the bill of lading received by the shipper. *See Pan American World Airways*, 559 F.2d at 1179; *Komatsu*, 674 F.2d at 809. *Cf. Vegas*, 1982 AMC at 597 (specifically ruling that a short form bill of lading, which incorporates a long form bill of lading containing § 1304(5) language, does not afford a fair opportunity).

The Fifth Circuit has accepted the constructive notice approach. In *Brown & Root, Inc. v. M/V PEISANDER*, 648 F.2d 415, 424 (5th Cir.1981), the court ruled that the incorporation by reference of COGSA in the bill of lading was prima facie evidence of fair opportunity. See also *Wuerttembergische v. M/V STUTTGART EXPRESS* 711 F.2d 621, 622 (5th Cir.1983) (stating that language regarding the limitation of liability "need not appear on the face of the bill of lading"; ruling that a tariff on file with the Federal Maritime Commission affords a fair opportunity). While not yet considered by the Fifth Circuit, it would also likely find that a short form bill of lading, which incorporates a long form containing § 1304(5) language, is prima facie evidence of fair opportunity.

█ We reject the constructive notice approach. Congress passed COGSA "to counteract the persistent efforts of carriers, who are the drafters of ocean bills of lading, to insert all embracing exceptions to liability." *Tessler Brothers*, 494 F.2d at 444. *See also Calmaquip Engineering West Hemisphere Corporation v. West Coast Carriers, Ltd.*, 650 F.2d 633, 639 (5th Cir.1981); *Wirth, Ltd. v. S/S ACADIA FOREST*, 537 F.2d 1272, 1276–77 (5th Cir. 1976). The courts have attempted to effect congressional intent by interpreting § 1304(5) to require carriers to afford shippers a fair opportunity to avoid the limitation of liability of that statute. To allow constructive notice is to emasculate the fair opportunity requirement. Like the Ninth Circuit, we are unwilling to impute the knowledge of limited liability under § 1304(5) to a shipper's employee from a bill of lading which merely refers him to yet another lengthy document where the limitation then is revealed. *See Pan*

*American World Airways*, 559 F.2d at 1177.[8] While such an approach might alert the "old salt," it does not afford the newcomer or the unsophisticated shipper a fair opportunity to avoid § 1304(5). Moreover, sufficiently affording the shipper a fair opportunity does not place an onerous burden on the carrier. It can be accomplished simply by including language substantially similar to § 1304(5) in the bill of lading issued to the shipper. Therefore, we hold that a short form bill of lading, which incorporates by reference a long form bill of lading containing § 1304(5) language, is not prima facie evidence of fair opportunity. Language which explicitly brings the limitation of § 1304(5) to the attention of the shipper must appear on the face of the bill of lading issued to the shipper.[9] For similar reasons, we also hold that a tariff on file with the Federal Maritime Commission is not prima facie evidence of fair opportunity. *See Komatsu*, 674 F.2d at 811.

We recognize that the long form bill of lading in this case, if issued, would have been prima facie evidence of fair opportunity. We also recognize that previously this court allowed the terms of a long form bill of lading, which stipulated the definition of "package" under § 1304(5), to have effect where the long form was incorporated by reference into the issued short form bill of lading. *See Commonwealth Petrochemi-*

*cals, Inc. v. S/S PUERTO RICO*, 607 F.2d 322, 327 (4th Cir.1979).

*Commonwealth*, however, is not controlling here. There, the court was faced with determining whether certain cargo constituted packages under COGSA. COGSA does not require that the shipper be apprised explicitly, at the time the shipping contract is consummated, of every term of the contract. In contrast, COGSA, as interpreted by the courts, does require that a shipper be given a fair opportunity to avoid the operation of § 1304(5) when entering the contract. In short, *Commonwealth* was not a fair opportunity case. Indeed, the short form bill of lading in that case contained § 1304(5) language, clearly constituting prima facie evidence of fair opportunity. Furthermore, the transaction in *Commonwealth*, unlike this case, was governed by the Shipping Act. 46 U.S.C. §§ 801–842 (1982).[10] That Act specifically provides for the use of a short form bill of lading which incorporates by reference a long form. *See* 46 U.S.C. § 844 (1982).

We conclude that U.S. Lines' short form bill of lading or tariff did not constitute prima facie evidence that Cincinnati Milacron was afforded a fair opportunity to avoid the liability limitation of § 1304(5). Having failed to carry its burden of proof, U.S. Lines cannot avail itself of the limitation. Accordingly, the ruling of the district judge finding U.S. Lines' liability for damages limited to $1,000, is reversed and the

---

**8.** The court stated:

> [W]e reject appellant's argument that an experienced shipper should be deemed to have knowledge of an opportunity to secure an alternative freight rate, and higher carrier liability, by reason of his knowledge of COGSA, 46 U.S.C. § 1304(5), made applicable by a "Paramount Clause" in the bill of lading, where such opportunity does not present itself on the face of the bill of lading. The bill of lading is usually a boilerplate form drafted by the carrier, and presented for acceptance as a matter of routine business practice to a relatively low-level shipper employee. We feel that imputing such knowledge of COGSA applicability and provisions to such an employee is an assumption that may well go beyond the bounds of commercial realism.

*Pan American World Airways*, 559 F.2d at 1177 (footnote omitted).

**9.** We do not hold that the only method by which a carrier may satisfy its initial burden of proof is with the inclusion of § 1304(5) language in the bill of lading issued to the shipper. We reserve judgment on whether there may be other language which would constitute prima facie evidence of fair opportunity. We also reserve judgment on whether the carrier may satisfy its initial burden of proof through some means other than the bill of lading. Because U.S. Lines did not argue this issue before the court, we do not consider it now.

**10.** The Intercoastal Shipping Act applies to domestic shipping. *See* 46 U.S.C. § 843 (1982). In *Commonwealth*, COGSA, which applies to international shipping, *see* 46 U.S.C. § 1300, 1312 (1982), was made applicable through the shipping contract.

case is remanded for determination of actual damages.

REVERSED AND REMANDED.

PHILLIPS, Circuit Judge, dissenting:

I would hold that a short form bill of lading which incorporates COGSA by reference and also incorporates all of the terms and conditions of the corresponding long form bill of lading, including the COGSA § 1304(5) limitation on liability, provides a shipper with a "fair opportunity" to avoid the $500 limitation by declaring a higher value for the goods shipped. Carriers customarily utilize short form bills of lading as convenient working documents, while reserving for the more cumbersome long forms most of the substantial terms of the shipping agreement. *See Commonwealth Petrochemicals, Inc. v. S/S PUERTO RICO*, 607 F.2d 322, 327 (4th Cir.1979). In this case, U.S. Lines' long form bill of lading, which specifically incorporated and described the COGSA § 1304(5) limitation on liability, was posted both in its office in Felixstowe and on board the AMERICAN LEGEND, was filed with the Federal Maritime Commission, and was available upon request as provided in the short form given to shippers. While it may indeed be unfair to hold the newcomer or unsophisticated shipper to the terms of COGSA when they nowhere appear in the shipping documents, *see Pan American World Airways, Inc. v. California Stevedore and Ballast Co.*, 559 F.2d 1173 (9th Cir.1977), it does not seem unduly burdensome to impute to shippers knowledge of all of the terms in the more accessible long form bill of lading including, where they appear, the applicable provisions of COGSA.

Accordingly, I respectfully dissent.