**Charles A. PEARSON, and Sun Alliance and London Insurance, P.L.C., Plaintiffs,**

v.

**BLACK KING SHIPPING CO., LTD., Hoegh Lines, Leif Hoegh & Co., A/S in personam, and M/V HOEGH NORMANIA, her engines, boilers, tackles, etc., in rem, Defendants.**

**Civ. A. No. 90–1416–N.**

United States District Court, E.D. Virginia, Norfolk Division.

May 21, 1991.

Richard V. Singleton, II, Morton H. Clark, for plaintiffs.

D. Arthur Kelsey, for defendants.

## ORDER

MacKENZIE, District Judge.

The above matter came before this Court on a de novo review of the *Magistrate Judge's Report and Recommendation* dated April 19, 1991. Following careful consideration, we hereby AFFIRM and ADOPT the recommendation of the Magistrate Judge that the defendant's motion for partial summary judgment should be granted, and that the plaintiff's motion for partial summary judgment should be denied.

It is so ORDERED.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

WILLIAM T. PRINCE, United States Magistrate Judge.

### Order of Designation

United States District Judge Walter E. Hoffman by an order entered March 7, 1991, designated the undersigned magistrate judge to conduct a hearing and to submit to a judge of the Court proposed recommendations for disposition by the judge of the motions for partial summary judgment.

A hearing was held on March 7, 1991 at which Richard V. Singleton, II, Esquire, Morton H. Clark, Esquire, and Andrew V. Buchsbaum, Esquire, appeared for plaintiffs, while D. Arthur Kelsey, Esquire, and A. Jackson Timms, Esquire, appeared for defendants.

## NATURE OF THE CASE

### Procedural Background

Plaintiffs, Charles A. Pearson ("Pearson") and Sun Alliance and London Insurance P.L.C. ("Sun Alliance") (collectively as plaintiffs, "Pearson"), seek recovery under the admiralty and maritime jurisdiction of the Court for damages to the Motor Yacht DEVELOPMENT carried on defendant Hoegh Lines' ("Hoegh") vessel HOEGH NORMANIA from New Orleans to Sri Lanka. Pearson was the owner and consignee of the yacht. Sun Alliance was the insurer of the yacht and is here the subrogee. All parties have filed motions for partial summary judgment raising the same issue: Does the $500 limitation of liability provided by the Carriage of Goods By Sea Act

("COGSA"), 46 U.S.C.App. § 1304(5), limit Hoegh's liability to that amount?

*Factual Background*

Pearson had purchased DEVELOPMENT and engaged Ardell Yacht and Ship Brokers ("Ardell") to refurbish it for use in the Maldive Islands. Ardell had also undertaken to have the yacht shipped to Sri Lanka after the refurbishing. Ardell engaged ABIS Forwarding ("ABIS"), a licensed freight forwarder, to arrange for the shipment of the yacht. ABIS selected Hoegh to be the carrier. The yacht was loaded on board the vessel in New Orleans for an on-deck voyage to Sri Lanka. It was placed in a cradle and it was shrink wrapped, both preparations having been arranged on behalf of the shipper. During discharge of the yacht in Sri Lanka, it was dropped into the water and suffered extensive damages.

ABIS is a freight forwarder with much experience in shipping boats. Anne Becker of ABIS handled the arrangements. After contacting a number of carriers for the purpose of obtaining the lowest freight rate, she selected Hoegh. She did not have in her office a Hoegh bill of lading form, so she prepared a Helenic Lines Limited short form bill of lading and sent it to Hoegh's agent with a facsimile cover message indicating the reasons for using the Helenic Lines form. On the bill prepared by ABIS on the Helenic Lines form, the shipper was listed as Ardell; the consignee was Pearson and Toby Wilson of Hummingbird Helicopter Ltd., Republic of Maldives; the forwarding agent was ABIS; and Sun Alliance was the insurer. The particulars of the cargo were also included. Hoegh's agent then prepared a Hoegh bill of lading using the identical information originally prepared by ABIS. In addition, the freight rate of $58,000 was inserted in the appropriate space by Hoegh.

The bill of lading as finally prepared contained the following language:

(On the front face): Goods received for Shipment by ocean Vessel ... for carriage subject to all the terms of this Bill of Lading and Carriers [sic] Tariff ... (On the reverse side):

2. PARAMOUNT CLAUSE

. . . . .

B. U.S. Clause Paramount.
If the goods are shipped to or from a port in the United States, this Bill of Lading shall have effect subject to the provisions of the US Carriage of Goods by Sea Act, approved April 16, 1936, which shall be deemed to be incorporated herein.

. . . . .

12. PACKAGE LIMITATION
Where containers have been stuffed by the Shippers or on his [sic] behalf, Carrier's liability will be limited to the amount set forth in applicable rules, regulation and law according to Clause Paramount hereof with respect to each container, except where the Shipper declares Ad Valorem on the face hereof and pays additional freight on such declared valuation.... For goods received break bulk Carrier's limitation as aforesaid shall be applied per carton, bundle, skid, pallet or other unit as the case may be unless the Shipper declares Ad Valorem value herein and pays additional freight etc. as above.

Hoegh's Tariff filed with the Federal Maritime Commission contained the following language:

RULE 12—AD VALOREM

A. The liability of the Carrier as to the value of shipments at the rates herein provided shall be determined in accordance with the clauses of the Carrier's regular Bill of Lading form.

B. If the Shipper desires to be covered for a valuation in excess of that allowed by the Carrier's regular Bill of Lading form, the Shipper must so stipulate in Carrier's Bill of Lading covering such shipments and such additional liability only will be assumed by the Carrier at the request of the Shipper and upon payment of an additional charge based on the

total declared valuation in addition to the stipulated rates applying to the commodities shipped as specified herein.

C.   Where value is declared on any piece or package in excess of the Bill of Lading limit of value of $500.00 the Ad Valorem rate, specifically provided against the item, shall be Ten (10%) Percent of the value declared in excess of the said Bill of Lading limit of value and is in addition to the base rate.

In an affidavit dated November 7, 1990, and filed with Hoegh's motion for partial summary judgment, Brian Coleman (a woman) stated that she had responsibility for the transaction on behalf of Ardell and that she was aware of the limitation of liability contained in the bill of lading. On February 12, 1991, Coleman stated in an affidavit submitted by Pearson and Sun Alliance that she was unaware of the limitation, i.e., the exact opposite. In a deposition taken on March 4, 1991, Coleman made it clear that anything that she had to say on the subject was suspect.

In an affidavit and deposition testimony, Becker, who was handling the transaction for ABIS, stated that she was an experienced freight forwarder and was aware of the limitation of liability. In her deposition, however, which was taken less than ninety days after her affidavit, she too backed off some of her affidavit statements. Nevertheless, in her deposition she reaffirmed her experience and familiarity with the carrier's limitation of liability.

On November 2, 1990, Hoegh's attorney hand delivered to plaintiffs' attorney requests for admission including: "19. ABIS Forwarding, Inc., was serving as an agent of the shipper." Plaintiffs' response, filed

sometime in January 1991[1], was: "Admit that ABIS was agent and/or sub-agent for both Charles A. Person Hoegh Lines [sic]."[2] At oral argument it was suggested that plaintiffs may move to withdraw this admission. In plaintiffs' counsel's letter of March 19, 1991 to the undersigned magistrate judge, Mr. Singleton requests that the admission be amended to state that ABIS was an independent contractor.

### DISCUSSION

In addition to oral argument, the two parties have filed seven memoranda of law and two letters supporting their positions. No more are needed. Plaintiffs' position is that the shipper did not have a fair opportunity to declare an ad valorem and to pay a higher freight rate in order to override the COGSA limitation of liability. In *Cincinnati Milacron, Ltd. v. M/V AMERICAN LEGEND*, 784 F.2d 1161, *superseded on other grounds*, 804 F.2d 837 (4th Cir.1986), the Fourth Circuit held that the limitation of liability is effective only when the carrier gives the shipper a fair opportunity to choose between higher or lower liability. The court further ruled that the initial burden of proving fair opportunity rests with the carrier.[3] Plaintiffs argue that fair opportunity was absent because nowhere in the bill of lading is the $500 limitation mentioned. At oral argument, plaintiffs asserted a rule that the limitation would never apply unless the language of COGSA § 4(5) is contained in the bill of lading issued at the time the cargo is received.

Hoegh maintains that the limitation applies because the shipper had both constructive notice and actual notice of the limitation as well as the ad valorem option. Hoegh also contends that the fact that

1.   It appears to be January 4th.

2.   Plaintiffs have taken the position throughout that Pearson, not Ardell, was the shipper. The admission that ABIS was Pearson's agent and/or sub-agent is, therefore, consistent with and treated as an admission that ABIS was the agent and/or sub-agent of the shipper.

3.   With some justification, Hoegh mildly urges the Court to overrule Fourth Circuit authority

holding that a shipper is entitled to such a fair opportunity. Hoegh cites scholarly authority for the proposition that the fair opportunity rule is a judicial encrustation unjustifiably amending COGSA. Plaintiffs also cite *Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989), wherein the Supreme Court held that the limitation of liability created by the Warsaw Convention is not lost because passenger tickets do not advise of the limitation.

Ardell was the shipper defeats the standing of either Pearson, the owner and consignee of the yacht, or Sun Alliance, the insurer, to assert the fair opportunity doctrine. *See infra* n. 4 and n. 6 (discussing Hoegh's final position).

If the law of the Fifth Circuit where this bill of lading was issued controlled, the answer to the question raised by the cross-motions for partial summary judgment would be easy to determine. In *Wuerttembergische v. M/V STUTTGART EXPRESS*, 711 F.2d 621 (5th Cir.1983), the cargo had been shipped from Belgium to Norfolk in a shipping crate. It was stipulated that the cargo was damaged during loading in Belgium. The issue in the case was whether the $500 limitation in COGSA was applicable to the loss under the bill of lading and the text of the tariff on file with the Federal Maritime Commission. The shipper[4] argued that the limitation applies only when the bill of lading contains on its face the provision for declaration of value. In upholding the limitation, the Fifth Circuit indicated:

> This case needs no extended discussion. It is controlled by our decision in *Brown & Root, Inc. v. M/V PEISANDER*, 648 F.2d 415 (5th Cir.1981). As we point out in that case, the key conclusion which we reach is that the published tariff of the carrier is law and is controlling. In that case the published tariff clearly gave the shipper a choice of valuations. In this case the tariff is in terms incorporated in the bill of lading.
>
> . . . .
>
> Under COGSA the valuation per package was $500. The option to increase valuation by declaration and paying a higher freight was clear in the tariff which was in terms incorporated into the bill of lading. The option not having

been expressed, the $500 per package limitation applies.

*Wuerttembergische*, 711 F.2d at 622.[5]

In this case, the bill of lading issued by Hoegh gave the shipper notice of several things. First, it gave notice that cargo received for carriage was subject to the terms of the bill of lading and the carrier's tariff. Secondly, the bill of lading gave notice in paragraph 2B (U.S. Clause Paramount) that carriage was subject to COGSA. Thirdly, it gave notice in paragraph 12 that the carrier's liability would be limited to the "law according to Clause Paramount hereto". Therefore, the bill of lading incorporated the tariff as well as COGSA, and it also gave notice of the COGSA limitation. The incorporated tariff, in Rule 12, gave notice of the $500 limitation and the option to declare a higher value for an additional charge.

In *Cincinnati Milacron, Ltd. v. M/V AMERICAN LEGEND, supra,* the court reversed the judgment of the district court holding that the $500 limitation applied. The *en banc* court affirmed for the reasons stated in the dissent of Judge Phillips to the superseded panel decision. *See Cincinnati Milacron*, 804 F.2d at 837. In his dissent to the initial decision, Judge Phillips indicated that he

> would hold that a short form bill of lading which incorporates COGSA by reference and also incorporates all of the terms and conditions of the long form bill of lading, including the COGSA § 1304(5) limitation on liability, provides a shipper with a 'fair opportunity' to avoid the $500 limitation by declaring a higher value for goods shipped.

*Cincinnati Milacron*, 784 F.2d at 1166 (Phillips, Circuit Judge, dissenting). At oral argument, Pearson's counsel argued that this quoted language is not a discussion of constructive notice. Whether it is or not, this discussion by Judge Phillips,

---

4. Actually, the plaintiff was the shipper's insurer. The issue of whether the insurer had standing to assert the fair opportunity argument, as raised in this matter, was not discussed. The plaintiff, after being identified as the underwriter of the cargo, was thereafter referred to as the shipper.

5. The court made no suggestion in the case that because the cargo was shipped to Norfolk that the decisions of the Fourth Circuit should apply if they would have dictated a different result.

which the *en banc* court adopted as its reason for affirming the district court's judgment, is sufficient enough basis for holding in this case that the $500 limitation applies. Considering Judge Phillips' holding in *Cincinnati Milacron* in juxtaposition with the facts in this case reveals the following:

### Cincinnati

Short form bill of lading incorporates COGSA by reference and incorporates all terms and conditions of long form bill of lading including COGSA limitation. Long form bill of lading posted in carrier's office in England and on board the vessel and was filed with Federal Maritime Commission.

### Pearson

Bill of lading (not characterized as short form or long form) incorporates by reference the carrier's tariff and incorporates COGSA by reference. It also states that liability is limited to law referred to in Clause Paramount, i.e., COGSA. Tariff on file with Federal Maritime Commission states $500 limitation and option to declare higher value.

The Court sees no cognizable distinction between these two situations sufficient to justify a different result.

In *Aetna Ins. Co. v. M/V LASH ITA-LIA*, 858 F.2d 190 (4th Cir.1988), a subrogee[6] claimed that its insured shipper did not have a fair opportunity to declare a higher value in the shipment of military vehicles. After noting that the bill of lading contained a provision limiting liability "similar to COGSA § 4(5)", and that the carrier's tariff on file with the Federal Maritime Commission gave notice of shipper's right to declare a higher valuation, the court held:

> Because the tariff and the bill of lading both explain the opportunity to declare a higher value and because the [shipper] had prior shipping experience, we agree with the district court's conclusion that Aetna failed to sustain its burden that a fair opportunity to declare value did not in fact exist.

*Aetna Ins. Co.*, 858 F.2d at 194. Fair opportunity applies equally where the bill of lading and tariff together explain the opportunity to declare a higher value. *Aetna Ins. Co.* also negates Pearson's contention that because Hoegh's bill of lading did not include the figure "$500" a conclusion that fair opportunity did not exist is required.[7]

The Court concludes, therefore, that Hoegh's bill of lading and tariff on file with the Federal Maritime Commission gave Pearson a fair opportunity to declare a higher value and to avoid the $500 limitation.

■ Another issue remains. The Fourth Circuit seems to have imposed an added burden on carriers. In Judge Phillips' dissent in *Cincinnati Milacron*, he stated that it did not seem unduly burdensome to impute to shippers knowledge of the terms of controlling rules and regulations, although "it may indeed be unfair to hold the newcomer or unsophisticated shipper to the terms of COGSA when they nowhere appear in the shipping documents ..." 784 F.2d at 1166. In addition, the Fourth Circuit in *Aetna Ins. Co.* appears to give significance to the fact that "the [shipper]

---

**6.** There was no suggestion that a subrogee could not raise this issue.

**7.** Pearson repeatedly argues that *Aetna* held that in order to establish *prima facie* evidence of fair opportunity the bill of lading must "clearly outline the limitation of liability." This argument is made to bolster Pearson's position that no limitation should be allowed unless the bill of lading on its face contains the language of COGSA § 4(5). This argument appears to be the rule in the Ninth Circuit. *See, e.g., Nemeth v. General S.S. Corp., Ltd.,* 694 F.2d 609, 611–12 (9th Cir.1982). However, the Ninth Circuit stands alone in this regard. *See* Sturley, *The Future of the COGSA Fair Opportunity Requirement: Is There Life After Carman Tool and Chan,* 20 J.Mar.L. & Com. 559 (October 1989). (This same article states that in other circuits, including the Fourth, the standards for meeting the limitation rule are easier to satisfy.) Pearson's argument from *Aetna* misses the point. The court in *Aetna* did not state that the rule was that the bill of lading had to clearly outline the limitation on its face. The court merely indicated that the carrier's bill in that case did clearly state the limitation.

had prior shipping experience" in applying the limitation. 858 F.2d at 194.

Pearson's argument that he, as owner of the yacht, was the shipper—an unsophisticated shipper—even though the bill of lading stated that Ardell was the shipper cannot be accepted. The uncontradicted evidence is that Hoegh was unaware of the role of Pearson except as the consignee. It would indeed be unfair if a carrier lost the limitation of liability contracted for and provided by COGSA in a situation where the shipper is the undisclosed agent of an undisclosed principal who later identify themselves and claim privileges that were unknown to the carrier. The Court finds that Ardell was the shipper in this case.

■ Even so, Pearson contends that Ardell was an unsophisticated shipper. Brian Coleman, who was associated with Ardell and handled the transaction for Pearson, executed two affidavits, as mentioned previously, saying she was an experienced shipper and that she was not an ·experienced shipper. On the other hand, Anne Becker of ABIS, the freight forwarder, has stated unequivocally that she is an experienced freight forwarder, is familiar with the shipment of boats, knows about the limitation of liability a carrier has, and knows the option a shipper has to declare higher value.

When it comes to ABIS's role vis-a-vis its customer, Ardell, however, Becker equivocated stating both that ABIS was Ardell's agent and that ABIS was an independent contractor. This equivocation is irrelevant for two reasons. First of all, Pearson admitted in responses to Hoegh's request for admission that ABIS was the shipper's agent. Hoegh requested this admission on November 2, 1990, and Pearson made the admission about January 4, 1991. Several months later, after cross-motions for partial summary judgment and five of the seven memoranda of law had been filed, Pearson sought to amend the response by denying that ABIS had been the shipper's

agent. The request came too late, and the proposed amended response will not be considered.[8]

Secondly, it is irrelevant whether Pearson wants to characterize ABIS as an independent contractor rather than as Ardell's agent for purposes of the shipment because the shipping documents prepared for Ardell by ABIS list ABIS as the forwarding agent. This characterization was adopted by Hoegh in drafting the final bill of lading. Hoegh's Post Hearing Memorandum, filed March 14, 1991, adequately discusses the authorities on the role of a freight forwarder, and in this case that role is not uncertain. ABIS was Ardell's agent, and Ardell was the shipper. Whatever knowledge the agent had was imputed to the shipper.

## RECOMMENDATION

It is recommended that the motion for partial summary judgment of the defendant, Hoegh, be GRANTED, and that the motion for partial summary judgment of the plaintiffs, Pearson and Sun Alliance, be DENIED, for the reasons that the shipper had constructive and imputed actual knowledge of the carrier's limited liability and the right to declare ad valorem for a higher freight rate.

## DIRECTIONS FOR MAILING AND REVIEW PROCEDURES

The clerk shall mail copies of this Report and Recommendation to counsel of record for the parties. By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing recommendations within ten (10) days from the date of mailing of this report to the objecting party (*see* 28 U.S.C. § 636(b)(1)(C)), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules.

---

**8.** The Fourth Circuit refused to allow a similar change in testimony in a recent unpublished decision. *See G.J. Creel and Sons, Inc. v. Edward Danay Adams, et al,* 927 F.2d 595 (4th Cir.1991) (*citing Barwick v. Celotex Corp.,* 736 F.2d 946, 960 (4th Cir.1984) and *Perma Research and Development Co. v. The Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969)).

2. A district judge shall make a *de novo* determination of those portions of this report or specific recommendation to which objection is made.

The parties are further notified that failure to file timely objections to the recommendations set forth above will result in waiver of right to appeal from a judgement of this court based on such recommendations. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir.1985) (quoting *Carr v. Hutto*, 737 F.2d 433, 434 (4th Cir.1984), *cert. denied*, 474 U.S. 1019, 106 S.Ct. 567, 88 L.Ed.2d 552 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir.), *cert. denied*, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).