PAN AMERICAN WORLD AIRWAYS, INC., a corporation, Plaintiff-Appellee,

v.

CALIFORNIA STEVEDORE AND BALLAST COMPANY, a corporation, Defendant-Appellant.

No. 75–2019.

United States Court of Appeals, Ninth Circuit.

Aug. 30, 1977.

Kent J. Clancy, Derby, Cook, Quinby & Tweedt, San Francisco, Cal., argued, for plaintiff-appellee.

John Mahoney, Cooper, White & Cooper, San Francisco, Cal., argued, for defendant-appellant.

Before CARTER and CHOY, Circuit Judges, and HOFFMAN,* District Judge.

PER CURIAM.

The ultimate issue in this case is whether the bill of lading concerned here offered the shipper a fair opportunity to declare a value higher than the $500 per package limitation of liability stipulated in the bill of lading, thus complying with the Carriage of Goods by Sea Act (COGSA), 46

---

* The Honorable Walter E. Hoffman, United States Senior District Judge, Eastern District of Virginia, sitting by designation.

U.S.C. § 1300, et seq.[1] The district court found and concluded that the provisions of the Barber Line bill of lading purporting to limit the liability of Barber, as carrier, were invalid since Pan American World Airways, Inc. (Pan Am), as shipper, was not given such fair opportunity and, thereby, the choice of obtaining a higher carrier liability by paying an increased freight.[2] The district court awarded plaintiff judgment for the full amount sought. We affirm.

■ The facts are not in dispute. In 1973, Pan Am purchased an aircraft scissors lift, a large machine used in the loading and unloading of cargo from airplanes. Pan Am or its freight forwarding agent, Novo International Corporation, then arranged for the shipment of the scissors lift by water from Alameda, California, to Balboa, Canal Zone, aboard the vessel TUGELA.[3] The other principal of these arrangements was the owner of the TUGELA, the steamship company Barber Lines.

California Stevedore and Ballast Company (CS&B), an expert stevedore, performed the physical work of loading at Alameda. While in the process of being hoisted, the scissors lift fell back onto the pier. The parties stipulated at trial that the resulting damage to the scissors lift amounted to $20,785.00. There is no issue as to liability, but only as to the measure of damages.

Clause 18 of the bill of lading reads:

18. AMOUNT OF LIMITATION

The responsibility of the carrier shall in no case, whether governed by the U. S.

Carriage of Goods by Sea Act, the Hague Rules or not, exceed the amount of $500.00 per package or customary freight unit. It is agreed that the word "package" shall include any container, flat pallet, van, trailer, vehicle, animal, pieces and all articles of any description except goods shipped in bulk.

As pertinent, 46 U.S.C., section 1304(5) reads:

Amount of liability; valuation
of cargo

(5) Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

CS&B admits that the bill of lading in this case contains no space for an excess valuation declaration. However, CS&B argues that there is no evidence that Pan Am ever attempted to declare a higher valuation. The "Paramount Clause" of the bill of lading incorporated the provisions of COGSA into the contract.[4] CS&B argues

1. Congress passed the Harter Act and COGSA to counteract the persistent efforts of carriers, who are the drafters of ocean bills of lading, to insert all embracing exceptions to liability. *Tessler Brothers (B.C.) Ltd. v. Italpacific Line*, 494 F.2d 438, 444 (9 Cir. 1974).

2. We need not reach the question raised in the previous proceedings as to whether the Barber Line bill of lading extended to California Stevedore and Ballast Company the limitation of liability provided therein for the benefit of Barber.

3. COGSA would not apply to this contract of its own force because it is a contract for carriage between a port in the continental United States and a port in a United States possession. However, the parties, by expressly making the contract subject to the provisions of COGSA,

made COGSA apply "as fully as if subject [thereto] by the express provisions . of [the Act]." 46 U.S.C. § 1312. Therefore, if any of the provisions of the bill of lading are in conflict with COGSA, those provisions are invalid. *Gilmore & Black, Law of Admiralty*, § 3.25 at 148 (2d ed. 1975).

4. As pertinent, it reads:
2. PARAMOUNT CLAUSE.
This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States of America, approved April 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the Carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act.

that there is no evidence that Pan Am, a sophisticated shipper acting through a sophisticated professional freight forwarding company, was ignorant of COGSA or of the terms of bill of lading. In addition, CS&B contends that Pan Am has advanced no reason why COGSA § 1304(5), a term of the contract, should not be given effect. CS&B cites *Mamiye Bros. v. Barber Steamship Lines, Inc.,* 241 F.Supp. 99 (S.D.N.Y.1965), *affirmed,* 360 F.2d 774 (2 Cir. 1966), *cert. den.,* 385 U.S. 835, 87 S.Ct. 80, 17 L.Ed.2d 70 (1966), as authority embracing the aforementioned procedure where provisions of the bill of lading conflict with its "Paramount Clause."

■ The district court found *Tessler Bros. (B.C.) Ltd. v. Italpacific Line,* 494 F.2d 438 (9 Cir. 1974) controlling on this issue. We are in agreement and adopt the district court's language in its unpublished opinion (Civil No. 74–1566):

> The doctrine that a carrier may limit its liability only if a shipper is afforded a fair opportunity to declare a higher value for the cargo and pay a correspondingly higher charge has been recognized in this Circuit as recently as last year in *Tessler Bros., supra,* at 443. That decision held that the language of COGSA § 4(5) regarding declaration of a higher value for goods and the language in the bill of lading to the same effect constituted prima facie evidence of an opportunity to avoid the limitation, and that the burden to prove otherwise was on the shipper. In the instant case, however, the limitation in Clause 18, which does not provide any opportunity for the shipper to declare higher value, in the opinion of this Court is so inconsistent with 46 U.S.C. § 1304(5) as to: (1) render the bill of lading provision null and void; (2) distinguish the instant action from *Tessler Bros.*; and (3) place on defendant the burden of proving that an opportunity did in fact exist for the shipper to avoid the limitation. Defendant having failed to carry this burden, the Court finds and concludes that the benefit of the limitation is not available to defendant.

The United States Supreme Court has been consistent in its treatment of this issue. In *Union Pacific Railroad Co. v. Burke,* 255 U.S. 317, 41 S.Ct. 283, 65 L.Ed. 656 (1921), it was held permissible for carriers to limit their liability to agreed values, where a reciprocal benefit of choice of alternative adjustment of freight rate to value was tied to the release. In that case, the plaintiff was able to prove that the defendant had no alternative rates, so the limitation of liability was ineffective. In *The Kensington,* 183 U.S. 263, 22 S.Ct. 102, 46 L.Ed. 190 (1902), a bill of lading provided that in no event was there to be a recovery of more than fifty francs per unit at which the package was to be valued unless an increased valuation be declared and extra freight paid. The Court held that the limitation in the clause to the words "in no event" was void as against public policy and as against the Harter Act (Comp.St. §§ 8029–8035), the forerunner of COGSA, and that the alternative rate and recovery must be expressed. More specifically, the Court found the arbitrary limitation, unaccompanied by any right to increase the amount by an adequate and reasonable proportional payment, void.

We find appellant CS&B's reliance on *Mamiye Brothers, supra,* to be tenuous and misplaced. The district court in the aforementioned case held, *inter alia,* that the evidence established that water damage from a hurricane to cargo stored on a dock would not have been guarded against by ordinary exertions of human skill and prudence, and hence respondents were exempt from liability under the act of God exemption of the Carriage of Goods by Sea Act. More specifically, the district court stated that where provisions of the bills of lading were contradictory, confusing and ambiguous in that they purported to incorporate COGSA and at the same time provided that in relevant periods the carrier should be liable merely as bailee, COGSA applied to both inbound and outbound goods because made part of the contract. The Court of

Appeals for the Second Circuit did not address itself to this facet of the district court opinion.

We decline to follow the reasoning of the District Court for the Southern District of New York in the context in which appellant would have us accept it. Rather, we reject appellant's argument that an experienced shipper should be deemed to have knowledge of an opportunity to secure an alternative freight rate, and higher carrier liability, by reason of his knowledge of COGSA, 46 U.S.C. § 1304(5), made applicable by a "Paramount Clause" in the bill of lading, where such opportunity does not present itself on the face of the bill of lading. The bill of lading is usually a boilerplate form drafted by the carrier, and presented for acceptance as a matter of routine business practice to a relatively low-level shipper employee. We feel that imputing such knowledge of COGSA applicability and provisions to such an employee is an assumption that may well go beyond the bounds of commercial realism.[5]

AFFIRMED.

---

5. Appellant initially contended that it was not liable because the scissors lift was never "loaded" on the vessel. This argument was abandoned at the time of argument. COGSA has been continuously interpreted as being applicable from the time the ship's tackle is hooked onto the cargo at the port of loading until the time when cargo is released from the tackle at the port of discharge. 46 U.S.C. § 1300, 1301(e); *R. L. Pritchard & Co. v. SS HELLEN-IC LAUREL,* 342 F.Supp. 388, 391 (S.D.N.Y. 1972); *Federal Insurance Co. v. American Export Lines, Inc.,* 113 F.Supp. 540, 542 (S.D.N.Y. 1953); 46 U.S.C. § 1311; 46 U.S.C. § 190, et seq.; *Hoegh Lines v. Green Truck Sales, Inc.,* 298 F.2d 240, 243 (9 Cir. 1962), approving *Mackey v. United States,* 83 F.Supp. 14 (S.D.N.Y.1948), affirmed, 197 F.2d 241 (2 Cir. 1952), where the cargo had been accepted for transportation and was subject to the ship's control.