647 F.2d 985
 NORTH RIVER INSURANCE CO., and Northwestern National
Insurance Co., Plaintiffs/Appellants,
v.
FED SEA/FED PAC LINE, Federal Commerce and Navigation, Ltd.,
Pan American Bulk Carriers, Inc., and the S. S.
Pacific Defender, Defendants/Appellees.
 No. 79-3348.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 6, 1981.
Decided June 12, 1981.
 
 Lee H. Cliff, Hall, Henry, Oliver & McReavy, San Francisco, Cal., for plaintiffs-appellants.
 Alan Nakazawa, Los Angeles, Cal., argued for defendants-appellees; Charles W. Cappel, Lillick, McHose & Charles, Los Angeles, Cal., on brief.
 Appeal from the United States District Court for the Central District of California.
 Before ALARCON, FERGUSON and REINHARDT, Circuit Judges.
 FERGUSON, Circuit Judge:
 
 
 1
 North River Insurance Co. and Northwestern National Insurance Co. ("Insurers") appeal a district court decision which refused to exercise jurisdiction over an action involving damage to goods transported on behalf of a company insured by Insurers. The district court refused to exercise jurisdiction because of a foreign forum clause incorporated in the bill of lading. Insurers assert that the district court has jurisdiction because foreign forum clauses are invalid when, as in this case, the United States Carriage of Goods by Sea Act ("COGSA") applies. Defendant charterer, Federal Commerce and Navigation, Ltd. ("Fed. Com."), counters that such foreign forum clauses are valid contract terms when COGSA applies by contract rather than of its own force. We hold that such clauses are enforceable in foreign trade when COGSA is incorporated only contractually, and affirm the decision of the district court.
 
 I.
 
 2
 American Marine, Ltd., shipped four yachts on the S. S. PACIFIC DEFENDER, a bulk carrier. The four were sent from Hong Kong, three to Milwaukee and one to Toronto. Carriage of each yacht was booked with a separate bill of lading. Each bill of lading contained a forum jurisdiction clause providing that disputes arising from carriage would be heard in the "Exchequer Court of Canada, Quebec Admiralty District, Montreal Registry." Each also contained a paramount clause providing that United States maritime law would apply to cargo destined for this country and that Canadian law would govern Canada-bound cargo. Finally, the contracts provided that the carriage of deck cargo was to be governed by the terms of the bill of lading.
 
 
 3
 By agreement, the yachts were strapped to the deck of the PACIFIC DEFENDER. All four were damaged en route from Hong Kong to Los Angeles, where the ship stopped to refuel. Shipper and charterer discussed off-loading the cargo in Los Angeles, but all yachts were taken to their original destinations after inspection of damages.
 
 
 4
 The shipper's insurers and assignees in interest, North River Insurance Co. and Northwestern National Insurance Co., compensated the shipper. They then filed suit in the Central District of California to recover losses from the charterer. Fed Com,[1] a Montreal corporation, moved to dismiss on the basis of the forum jurisdiction clause in the bill of lading.[2] Insurers opposed dismissal, arguing that jurisdiction over the disputed stemming from damage to the Milwaukee-bound yachts was proper under American maritime law. It claimed that jurisdiction over the dispute involving the Toronto-bound cargo was proper because the shipper and charterer allegedly agreed that Fed Com would off-load that yacht in Los Angeles. The charterer's refusal to do so, Insurers claimed, constituted a deviation from the contract, thereby nullifying the forum provisions in the bill of lading.
 
 
 5
 The district court dismissed the action on the basis of the foreign forum clause. This appeal followed.
 
 II.
 
 6
 In 1893, Congress passed the Harter Act, 46 U.S.C. § 190 et seq. (1893), to invalidate bill of lading clauses that relieved vessel owners from liability for damage due to their negligent actions in transporting cargo. Pan American World Airways v. California Stevedore & Ballast, 559 F.2d 1173, 1175 n.1. (9th Cir. 1977). To the extent that the Harter Act governed international trade leaving from or entering American ports, it was superseded in 1936 by the Carriage of Goods by Sea Act, 46 U.S.C. § 1300, et seq. (1936). The Harter Act therefore only governs domestic trade. COGSA was passed to further and to strengthen the purposes served by the Harter Act. See Tessler Brothers (B.C.) Ltd. v. Italpacific Line, 494 F.2d 438, 444-45 (9th Cir. 1979).
 
 
 7
 We have held that COGSA may be incorporated by contract to govern situations normally outside its scope, Grace Line, Inc. v. Todd Shipyards Corp., 500 F.2d 361, 371 (9th Cir. 1974) (parties may contractually provide for COGSA coverage of carrier's agent). Thus, parties may contractually choose to apply the provisions of the Act to individuals otherwise exempted from maritime law. Id. They may also incorporate COGSA where the Harter Act would otherwise apply. 46 U.S.C. §§ 1311, 1312. See Pan American World Airways v. California Stevedore & Ballast, supra, at 1175 (contractual adoption of COGSA to domestic shipping valid). When COGSA is incorporated by contract, it, rather than the Harter Act, controls. Id.
 
 
 8
 In the instant case, the parties agreed that the yachts would be carried on the deck of the PACIFIC DEFENDER. COGSA does not apply ex proprio vigore to cargo carried on deck, 46 U.S.C. § 1301(c). The parties, however, incorporated COGSA contractually with respect to cargo destined for American ports, even though carried on deck. COGSA thus applies with respect to the Milwaukee-bound yachts.[3] The parties further agreed that Canadian maritime law would control litigation concerning the Toronto-bound cargo.III.
 
 
 9
 A. The Foreign Jurisdiction Clause.
 
 
 10
 Insurers claim that the district court has jurisdiction over cases governed by COGSA and, consequently, over the Milwaukee-bound cargo. Relying upon Indussa Corp. v. S.S. RANBORG, 377 F.2d 200 (2d Cir. 1967), Insurers assert that foreign jurisdiction clauses are invalid when COGSA governs. Indussa held a foreign jurisdiction clause inapplicable in a situation when COGSA applied of its own force. Id. at 204. District courts in this circuit have followed Indussa in cases in which COGSA applied ex proprio vigore. Mitsui & Co. Ltd. v. M/V GLORY RIVER, 464 F.Supp. 1004, 1004 (W.D.Wash.1978); Northern Assurance Co., Ltd. v. M/V CASPIAN CAREER, (1977) A.M.C. 421 (N.D.Cal.1977). But cf. Roach v. Hapag-Lloyd, A. G., 358 F.Supp. 481, 484 (N.D.Cal.1973).
 
 
 11
 Fed Com counters that Indussa does not address a situation in which COGSA is incorporated only by contract into a bill of lading. When COGSA does not apply of its own force, Fed Com asserts, a foreign forum clause is a contract term entitled to as much respect as the provision incorporating COGSA. It argues that, in these circumstances, the rule of BREMEN v. Zapata Offshore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), should apply. The parties in BREMEN, a non-COGSA case, had provided that all claims would be heard in a foreign forum. One party sought to avoid that arrangement. The court determined that the parties' mutual agreement to litigate in that forum was a valid and enforceable contract term.[4] Id. at 15, 92 S.Ct. at 1916.
 
 
 12
 Circuits take differing approaches regarding the operation of COGSA when incorporated by contract. Pan American World Airways, supra, at 1175 n.3, held that when the parties contracted for the application of COGSA to domestic carriage, all terms inconsistent with the Act were invalid. We reached that result in Pan American World Airways by relying on § 1312 of COGSA, which states that COGSA shall have the same effect when incorporated into a contract for domestic carriage as it does when it operates of its own force. See Burdines, Inc. v. Pan-Atlantic Steamship Corp., 199 F.2d 571, 573 (5th Cir. 1952).
 
 
 13
 Section 1312 applies only when COGSA is incorporated into domestic carriage contracts otherwise governed by the Harter Act, unlike the instant case.[5] Nonetheless, the Second, Third, and Fourth Circuits have held that even under the language of § 1312 parties may contract for terms inconsistent with COGSA while at the same time agreeing to incorporate the Act into the contract of carriage. See Commonwealth Petrochemicals, Inc. v. S/S PUERTO RICO, 607 F.2d 322 (4th Cir. 1979); PPG Industries, Inc. v. Ashland Oil Co.-Thomas Petroleum Transit Division, 527 F.2d 502, 507 (3d Cir. 1975); Ralston Purina Co. v. Barge Juneau & Gulf Caribbean Marine Lines, Inc., 619 F.2d 374, 375 (5th Cir. 1980).
 
 
 14
 The Fourth Circuit provides a clear distinction between contracts in which COGSA applies of its own force and those in which the statute would have no application absent a contractual term. In Commonwealth Petrochemicals, Inc., supra, at 325, the court held that even when COGSA is incorporated under the language of § 1312, it does not have "statute rank" but rather is a contractual term like any other. Hence, a contractual term otherwise inconsistent with COGSA remains enforceable. In Union Insurance Society of Canton, Ltd. v. S. S. ELIKON, 642 F.2d 721 (4th Cir. 1981), the court held a forum selection clause invalid where COGSA was referred to as governing law in the bill of lading, but also applied ex proprio vigore under 46 U.S.C. § 1300.
 
 
 15
 In circumstances indistinguishable from the case before this court, the Second Circuit has ruled that parties may contractually incorporate terms inconsistent with COGSA. Pannell v. United States Lines Co., 263 F.2d 497 (2d Cir.), cert. denied, 359 U.S. 1013, 79 S.Ct. 1151, 3 L.Ed.2d 1037 (1959), involved carriage of goods between an American and a foreign port. As in the instant case, the contract provided for on-deck carriage so that the bill of lading was removed from the ex proprio vigore coverage of COGSA under 46 U.S.C. § 1301(c). Section 1312 did not apply to render the transactions fully subject to the statute. Because the case did not involve domestic carriage, the Second Circuit concluded that COGSA in those circumstances is merely a term of contract which does not prevail over other specific provisions in the bill of lading. Id. at 498.
 
 
 16
 Parties may contractually provide for a forum in which to litigate, BREMEN, supra, just as they may contractually agree on COGSA as the governing law with respect to certain parties. Grace Line, Inc., supra, at 371. Because the language of COGSA is not inconsistent with foreign jurisdiction clauses, we reject the view that COGSA preempts all contract terms when its sole force is by incorporation into a contract for foreign transportation. When international parties contractually provide for COGSA to govern disputes, they need not be barred from determining where they want the disputes to be heard. We hold, therefore, that BREMEN controls this case, in which COGSA is incorporated into a contract for foreign carriage, outside of the ex proprio vigore coverage of either the Harter Act or COGSA.
 
 
 17
 B. Deviation.
 
 
 18
 Insurers claim that the district court can accept jurisdiction over the damage claim involving the Toronto-bound yacht because the carriage of the yacht from Los Angeles to Toronto was a deviation that invalidated the bill of lading regarding that carriage. They base this claim on the allegation that the parties agreed that Fed Com would off-load that yacht in Los Angeles and that it subsequently refused to do so. Insurers conclude that the breach of the agreement to unload renders the Canada-bound cargo subject to American law over which a United States court may assume jurisdiction.
 
 
 19
 A carrier deviation from the original bill of lading will prevent the carrier from relying on its terms. Surrendra (Overseas) Private, Ltd. v. S. S. HELLENIC HERO, 213 F.Supp. 97, 101 (S.D.N.Y.), affirmed, 324 F.2d 955 (2d Cir. 1963). The carrier becomes strictly liable for all damages to the relevant cargo resulting from the deviation.
 
 
 20
 Though carriage beyond a designated port is a deviation, id., the breach of an oral argument outside the terms of the bill of lading is not. Here, the carrier complied strictly with its terms by unloading the cargo in Toronto.[6]
 
 
 21
 Furthermore, Insurers ask this court to assert jurisdiction on the basis of the outcome of the question before the court. They request that this court take jurisdiction to determine if a deviation occurred that deprives Fed Com of the provisions of its contract, but on the basis of the conclusion that a deviation has taken place. The applicable bill of lading provides for Canadian law to govern. No court has held that the allegation of deviation deprives the holder of the bill of lading of the coverage of governing law within it. Canadian courts, accordingly, retain jurisdiction to determine according to that law if a deviation has occurred to deprive Fed Com of its contractual provisions.
 
 
 22
 The Canadian jurisdiction provision in the bill of lading over the Toronto-bound yacht remain in effect.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 Fed Com is the only named appellee in this appeal. The parties do not identify Fed Sea/Fed Pac Line. Pan American Bulk Carriers, Inc., is the owner of the PACIFIC DEFENDER
 
 
 [2]
 Alternatively, Fed Com moved to transfer the action, pursuant to 28 U.S.C. § 1404(a), to the Eastern District of Wisconsin
 
 
 [3]
 Insurers argue that the Harter Act controls this case because it applies ex proprio vigore when COGSA does not. The Harter Act was preserved for domestic rather than international trade, Commonwealth Petrochemicals, Inc. v. S/S PUERTO RICO, 607 F.2d 322, 325 (4th Cir. 1979); Sunkist Growers, Inc. v. Adelaide Shipping Lines, Ltd., 603 F.2d 1327, 1333-4 (9th Cir. 1979), cert. denied, 444 U.S. 1012, 100 S.Ct. 659, 62 L.Ed.2d 640 (1980), as well as to the time prior to loading and after delivery, Isthmian Steamship Co. v. California Spray Chemical Corp., 300 F.2d 41, 46 (9th Cir. 1962). Accordingly, Insurers' argument is not supported where the contract involves international carriage where COGSA expressly renders the Harter Act inapplicable. 46 U.S.C. § 1300
 
 
 [4]
 Insurers argue that bills of lading may be adhesion contracts which distinguish them from the mutuality aspect of the BREMEN decision. They do not allege duress in the formation of this contract. While terms in bills of lading are construed against the carrier when they involve maritime topics that may be confusing to the contracting party, Pan American World Airways, supra, at 1177, we do not consider, nor have Insurers alleged, the foreign forum clause was incomprehensible or confusing to the parties so as to render it an adhesion contract outside the coverage of BREMEN. When insurers do not contend the contracting parties were unaware of the term in question, "we are reluctant to remedy what might be nothing more than lack of foresight." Tessler Brothers (B. C.) Ltd., supra, at 445. See Grace Line, Inc. supra, at 372
 
 
 [5]
 Section 1312 of Title 46 states in pertinent part:
 (A)ny bill of lading for the carriage of goods by sea between (domestic) ports, containing an express statement that it shall be subject to the provisions of this chapter, shall be subjected hereto as fully as if subject hereto by the express provisions of this chapter.
 
 
 [6]
 Relying upon Lekas & Drivas, Inc. v. Goulandris, 306 F.2d 426 (2d Cir. 1962), Insurers argue that Fed Com had a duty to off-load the yacht in Los Angeles to mitigate damages. They contend that the failure to observe this duty constituted a deviation. Lekas required off-loading of cheese where spoilage was imminent. Id. at 431-32. Insurers make no such claim of foreseeable imminent harm with regard to the continuation of the transport of the Toronto-bound ships. Lekas is therefore inapposite to the instant situation