**INSTITUTE OF LONDON UNDER-WRITERS and Ferguson and Company, Plaintiff–Appellee,**

v.

**SEA–LAND SERVICE, INC., and Container Stevedoring Company, Inc., Defendants–Appellants.**

**INSTITUTE OF LONDON UNDER-WRITERS COMPANIES, Plaintiff–Appellant,**

**and**

**Ferguson & Co., Plaintiff,**

v.

**SEA–LAND SERVICE, INC., and Container Stevedoring Co., Inc., Defendants–Appellees.**

Nos. 88–3700, 88–3701.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 1989.

Decided Aug. 4, 1989.

Paul A. Anderson, Madden, Poliak, Mac-Dougall & Williamson, Seattle, Wash., for plaintiffs/appellants/cross-appellees.

Jerome C. Scowcroft, Schwabe, Williamson, Wyatt & Lenihan, Seattle, Wash., for defendants/appellees/cross-appellants.

Before GOODWIN, Chief Judge, and WRIGHT and NORRIS, Circuit Judges.

GOODWIN, Chief Judge:

While a 45–foot yacht was being unloaded from the cargo ship that had carried it as a deck load from Taiwan to the port of Tacoma, the yacht slipped from its slings and fell into the water. The ultimate issue in the resulting litigation is whether the carrier and the stevedore are liable to the shipper for the actual damage to the yacht (as stipulated), or for the $500 per "package" limitation provided for cargo of undeclared value in the bill of lading.

To decide these issues, we must consider a question that has not previously found a definitive answer in this circuit: In a contract for foreign carriage that incorporates the Carriage of Goods by Sea Act (COGSA), 46 U.S.C.App. §§ 1300–1315 (1982 & Supp. V 1987), but to which COGSA does not apply *ex proprio vigore*, what is the effect of otherwise valid contract terms inconsistent with COGSA? We hold that in such a contract, COGSA has the effect of a contractual term only, and inconsistent terms may therefore be given force.

## BACKGROUND

COGSA is a statutory scheme passed in 1936 regulating the terms of ocean carriage covered by bills of lading. Ch. 229, 49 Stat. 1213 (1936). COGSA applies only to contracts for foreign carriage, that is, between ports in the United States or its possessions or territories and foreign ports.

46 U.S.C.App. § 1312. The Act itself provides that the parties to a bill of lading can incorporate COGSA's terms in their contract even where COGSA would not apply of its own force. *Id.* This course may be followed, for example, in the case of bill of lading for domestic carriage, or a bill of lading covering goods not normally within COGSA's scope. The latter sort of bill of lading is at issue here. Because COGSA limits liability for damage to shipped goods to $500 per "package" or customary freight unit (CFU), *id.* § 1304(5), much litigation has centered on who, apart from those specifically mentioned in the Act, is entitled to this significant limitation, as well as what the terms "package" and "CFU" mean in context. Both of these areas of dispute figure in this case.

The case, brought by the Institute of London Underwriters Companies and Ferguson & Co. (collectively, "the Cargo Interests"), appellants and cross-appellees here, was tried to the court upon documents and an agreed-upon statement of facts. The only issues tried were whether and to what extent the liabilities of appellees/cross-appellants Sea–Land Services, Inc. ("the Carrier") and Container Stevedoring Co., Inc. ("the Stevedore") were limited under COGSA and the bill of lading. The district court ruled, in part, as follows:

5. ... Section 1301(c) of [COGSA] defines goods as wares, merchandise, and articles of every kind, *except*, live animals and cargo which by contract of carriage is stated as being carried on deck and is so carried. In this instant case, the cradle containing the ... yacht was stowed on deck. Therefore, the $500 package/good limitation of [COGSA] does not apply since items carried on the ship's deck are specifically excluded from [COGSA's] $500 package/goods limitation.

6. ... Paragraph 17 of Sea–Land Services' bill of lading defines package to include containers, vans or trailers, cargo shipped on skids, cradles, pallets, unitized loads, groups, or assemblages. Sea–Land Services' bill of lading does not

define goods.[1] Sea–Land Services, Inc., however, incorporates by reference COG-SA's terms. Since COGSA's definition of goods specifically [sic] excludes the ... yacht, Sea–Land services may not rely upon the $500 limitation.

7. [COGSA] also provides a $500 limitation on liability per [CFU] for goods not shipped in packages. The term [CFU] usually refers to the unit of quantity, weight, or measurement of the cargo customarily used as a basis for calculation of the freight rate to be charged.... This court rules as a matter of law that the customary freight unit is the unit upon which the charge for freight is computed. The ... yacht is 45 feet long and Sea–Land appears to calculate freight by a per foot measurement. Since ... 45 multiplied by $500 results in $22,500, Sea–Land Services, Inc.'s liability, calculated ... per [CFU], shall be assessed at $22,500, and not the $500 [per package limitation].

\* \* \* \* \* \*

10. ... [P]arties to a contract of carriage [may] limit a stevedore's liability, but only if the intent to do [so] is clearly expressed. Sea–Land Services' Himalaya Clause, paragraph 2 in Sea–Land's bill of lading, will only be invalid, as a matter of law, if it can be proven that the intent to [limit the Stevedore's liability] was not expressed clearly. Upon reviewing the Himalaya Clause in question, this court rules Sea–Land Services' intent to limit [the Stevedore's] liability was expressed clearly.... Thus, [the Stevedore's] liability is also limited to $22,500.

Thus, the district court effectively held that COGSA applied to the shipment, ruling that the liability of the Carrier and Stevedore was limited to $500 per customary freight unit (CFU), and that the yacht comprised 45 CFUs, so that the liability of the Carrier and Stevedore was limited to a total amount of $22,500.

The Cargo Interests appeal two aspects of the ruling: that the incorporation of COGSA into the bill of lading served to limit liability for damage to the yacht, and that the Stevedore, in addition to the Carrier, was benefited by COGSA's limitation. The Carrier and Stevedore together cross-appeal the district court's holding· that the yacht comprised 45 CFUs.

We affirm the district court's application of COGSA to limit liability for damage to the yacht, and its extension of the COGSA limitation to the Stevedore. We reverse the judgment, however, because it was based upon the unsupported finding that the yacht comprised 45 CFUs. We hold that under the express terms of the bill of lading, the yacht was a COGSA "package" for purposes of determining limitation of liability.

## DISCUSSION

### A. *Application of COGSA to This Shipment*

#### 1. *Incorporation of COGSA*

■ It is beyond dispute that COGSA itself does not apply to the on-deck shipment of the yacht. 46 U.S.C.App. § 1301(c) ("The term 'goods' [excludes] ... cargo which by the contract of carriage is stated as being carried on deck and is so carried.") However, the Clause Paramount (paragraph 1) of the bill of lading states,

This bill of lading shall have effect subject to all the provisions of the Carriage of Goods by Sea Act of the United States of America.... The defenses and limitations of said Act *shall apply to goods whether carried on or under deck.*

(Emphasis added.) It has long been clear that COGSA can be incorporated into a carriage contract even where it would not otherwise govern. *See Grace Line, Inc. v. Todd Shipyards Corp.*, 500 F.2d 361, 371 (9th Cir.1974) (parties may contractually provide for COGSA coverage of carrier's agent).

---

1. Although the district court's holding that the "bill of lading does not define goods" is literally true, the Clause Paramount language stating that COGSA "shall apply to goods whether carried on or under deck" has the effect of broadening the COGSA definition of "goods" for the purposes of the parties' agreement.

To say that COGSA has been incorporated into a contract does not, however, exclude further debate. Circuits have taken different approaches to what effect such incorporation should be given. Their analysis generally begins with section 1312:

[A]ny bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea between [any port of the United States or its possessions, and any other port of the United States or its possessions], containing an express statement that it shall be subject to the provisions of this chapter, shall be subjected hereto as fully as if subject hereto by the express provisions of this chapter....

46 U.S.C.App. § 1312. Thus, the Ninth Circuit has held that when parties contract for the application of COGSA to *domestic* carriage—where otherwise the Harter Act of 1893, 46 U.S.C.App. §§ 190 *et seq.* (1982), would apply—all terms inconsistent with COGSA are considered invalid. *Pan American World Airways v. California Stevedore & Ballast Co.*, 559 F.2d 1173, 1175 n. 3 (9th Cir.1977). The Third, Fourth, and Fifth Circuits, on the other hand, have held to the contrary that terms inconsistent with COGSA are given force as contract terms in contracts for domestic carriage. *See PPG Inds., Inc. v. Ashland Oil Co.–Thomas Petroleum Transit Div.*, 527 F.2d 502, 507 (3d Cir.1975); *Commonwealth Petrochemicals, Inc. v. S/S PUERTO RICO*, 607 F.2d 322, 328 (4th Cir.1979); *Ralston Purina Co. v. Barge JUNEAU*, 619 F.2d 374, 375–76 (5th Cir.1980).

■ Though foreign shipments generally are covered by COGSA, COGSA did not govern this shipment of its own force because COGSA excludes deckloads from its definition of "goods." The bill of lading, however, purported to apply COGSA to deckloads. The Second Circuit has considered a case parallel to this case. There, foreign carriage of a yacht shipped on-deck was also involved; consequently, COGSA did not apply *ex proprio vigore*. The bill of lading stated, in terms similar to those of the instant bill of lading, that "in respect to goods carried on deck ... 'the carrier shall have the benefit of all and the same

rights, immunities, exceptions and limitations contained in said Carriage of Goods by Sea Act, notwithstanding Sec. 1(c) thereof.'" *Pannell v. United States Lines Co.*, 263 F.2d 497, 498 (2d Cir.1959), *modifying Pannell v. S.S. AMERICAN FLYER*, 157 F.Supp. 422 (S.D.N.Y.1957), *cert. denied*, 359 U.S. 1013, 79 S.Ct. 1151, 3 L.Ed.2d 1037 (1959). The court stated, "Where a statute is incorporated by reference its provisions are merely terms of the contract evidenced by the bill of lading." *Id.; see also Croft & Scully Co. v. M/V SKULPTOR VUCHETICH*, 664 F.2d 1277, 1280 (5th Cir. 1982) (Brown, J.) (where incident involving foreign-shipped goods occurred in shipyard rather than on vessel, so COGSA not applicable of its own force, the fact that bill of lading incorporated COGSA meant COGSA's "provisions [were] merely terms of the contract of carriage which, like any other contractual terms, call out for judicial interpretation in case of dispute").

In *North River Ins. Co. v. Fed Sea/Fed Pac Line*, 647 F.2d 985 (9th Cir.1981), *cert. denied*, 455 U.S. 948, 102 S.Ct. 1448, 71 L.Ed.2d 662 (1982), we considered whether a foreign jurisdiction clause could be enforced under a contract for on-deck foreign carriage that incorporated COGSA. We noted that the Second Circuit had held that a foreign jurisdiction clause would be inapplicable in a situation in which COGSA applied of its own force, and that district courts in this circuit had followed that holding. 647 F.2d at 988 (citing *Indussa Corp. v. S.S. RANBORG*, 377 F.2d 200 (2d Cir. 1967)). We distinguished such cases, however, from those in which COGSA was made applicable by contract. We concluded that "[b]ecause the language of COGSA is not inconsistent with foreign jurisdiction clauses, we reject the view that COGSA preempts all contract terms when its sole force is by incorporation into a contract for foreign transportation," 647 F.2d at 989, and permitted the limitation to apply.

The Carrier and Stevedore argue that our statement in *North River* that we "reject[ed] the view that COGSA preempts all contract terms when its sole force is by incorporation into a contract for foreign

transportation" determines the outcome in this case. However, because this statement can be characterized as *dictum*, *North River* does not dictate our holding. Rather, the language of *North River* indicates a direction for Ninth Circuit law that we recognize by holding that the parties here were free to define covered goods in a way contrary to COGSA's definition. Thus we concur in the logic of other courts of appeals decisions, *see supra*, and hold that terms inconsistent with COGSA, but which are otherwise valid contract terms, may be given force where COGSA is incorporated into a contract for foreign carriage to which it would not apply *ex proprio vigore*.

### 2. *Opportunity to Declare a Higher Value*

■ Even given that the incorporation of COGSA applied to the shipment of the yacht, the Carrier and the Stevedore must also demonstrate that the shipper was given a fair opportunity to opt out of the bill of lading's limitation of liability.

In this circuit, a carrier can limit its liability for cargo damage to $500 per package or customary freight unit pursuant to the bill of lading and section 4(5) of COGSA, 46 U.S.C.App. § 1304(5), if the shipper is given a fair opportunity to opt out of that limitation by declaring a higher value, but does not do so. *Carman Tool & Abrasives, Inc. v. Evergreen Lines*, 871 F.2d 897, 899 (9th Cir.1989); *Tessler Bros. (B.C.) Ltd. v. Ital-pacific Line*, 494 F.2d 438, 443 (9th Cir.1974). Moreover, if the bill of lading contains an express recitation of the $500 limitation (rather than a mere incorporation of COGSA without more), and of the opportunity to avoid that limitation by declaring a higher value and paying additional freight, the bill of lading will constitute *prima facie* evidence that the shipper was given the requisite fair opportunity. *Nemeth v. General S.S. Corp.*, 694 F.2d 609, 611 (9th Cir.1982).

■ The bill of lading in this case clearly meets these requirements. Clause 23, on the face of the bill, provides a space to declare a higher value:

> (23) Declared Value $___ ___ If shipper enters a value, carriers "package" limitations [sic] of liability does not apply and the ad valorem rate will be charged.

Paragraph 17 of the bill of lading also explains that the shipper may declare a higher value, in addition to setting forth explicitly the $500 limitation:[2]

> 17. VALUATION. In the event of loss, damage or delay to or in connection with goods exceeding an actual value the equivalent of $500 ... per package, or in case of goods not shipped in packages, per shipping unit, the value of the goods shall be deemed to be $500 per package or unit, unless the nature and higher value of the goods have been declared by the shipper herein and extra charge paid as provided in Carrier's tariff.... When [COGSA] does not apply of its own force to goods not shipped in packages, the $500 limitation shall apply to each shipping or customary freight unit or piece....

Because the bill of lading constituted *prima facie* evidence of the opportunity to avoid the limitation by declaring a higher value, the burden shifted to the Cargo Interests to prove that the shipper was denied such an opportunity. *Nemeth*, 694 F.2d at 611. This burden was not carried. The district court found that the shipper, Angel Marine Industries, was sophisticated in the shipment of yachts, had shipped yachts with the Carrier on several previous occasions, and was familiar with the Carrier's form of bill of lading. It found further that if the shipper had attempted to declare a value in excess of $500, it could have done so. These findings of fact are not clearly erroneous.

### B. *Extension of COGSA's Limitation of Liability to the Stevedore*

■ The determination whether COGSA's limitation of liability extends to the

---

**2.** The Cargo Interests' position at oral argument that *Tessler Bros.* requires a *verbatim* recitation of section 4(5) in the bill of lading does not aid them. A comparison of paragraph 17 with section 4(5) reveals that the pertinent part of "the language of COGSA Section 4(5) is contained in the bill of lading," as required. *Nemeth*, 694 F.2d at 611.

Stevedore turns on an examination of the Himalaya Clause,[3] paragraph 2 of the bill of lading. A Himalaya Clause is enforced when the intent to extend the carrier's defenses and limitation of liability to the Stevedore is clearly expressed. *Tessler Bros.*, 494 F.2d at 442. In *Tessler Bros.*, a dry cleaning machine was damaged while being discharged from the transporting vessel by a stevedore company. The Himalaya Clause in the bill of lading extended the carrier's limitation of liability to "every ... servant or agent of the Carrier [including every independent contractor]." 494 F.2d at 445. The court held that COGSA limited the stevedore's liability to $500, finding the Himalaya Clause to be sufficiently clear notwithstanding it never specifically mentioned stevedores. *Id.* at 446–47.

Here, the Himalaya Clause reads:

If it shall be adjudged that *any person other than the owner or demise charterer* (including the master, time charterer, agents, *stevedores*, lashers, watchmen and *other independent contractors*) is the carrier or bailee of the goods, or is otherwise liable in contract or in tort, all rights, exemptions, and limitations of liability ... shall be available to such other persons.

(Emphasis added). The Cargo Interests make a strained syntactical argument in support of their position that this clause is ambiguous and so does not extend benefits to the Stevedore. They claim that because the parenthetical phrase that refers to stevedores follows the term "demise charterer," it must supplement only that term, and not the entire phrase beginning "any person other than." They posit that "[i]f [Sea–Land] intended the phrase to supplement 'any person', the parenthetical phrase should have immediately followed 'person'." Therefore, they conclude that the benefits extend only to persons "other than

the owner or demise charterer ... [or] stevedores."

Although the Cargo Interests correctly assert that any ambiguity in the bill of lading must be construed in favor of the shipper and against the carrier, *see Encyclopaedia Britannica, Inc. v. S.S. HONG KONG PRODUCER*, 422 F.2d 7 (2nd Cir. 1969), they fail to demonstrate that the Himalaya Clause is ambiguous. First, as a matter of common usage, paragraph 2 is obviously designed to extend benefits to agents and independent contractors of the carrier. *See Taisho Marine & Fire Ins. Co. v. Vessel GLADIOLUS*, 762 F.2d 1364, 1367 (9th Cir.1985) ("[In *Tessler Bros.*,] [w]e reasoned that the parties' use of the more inclusive term ['independent contractors'] evidenced their intent to extend coverage to stevedores."). If it were the case that the several types of agents and independent contractors listed in the parenthetical phrase were to be *excluded* from the extension of COGSA coverage, the Himalaya Clause would be rendered extraordinarily empty, as it would exclude from coverage all "agents" and "independent contractors." Second, by the Cargo Interests' logic, the parenthetical phrase should list variations of "demise charterers" if it serves to modify that phrase only. However, it is incredible that such agents as stevedores, lashers, and watchmen could be considered to fall into the category of demise charterer, however broadly construed.[4]

We hold that the Himalaya Clause is unambiguous, and so affirm the district court's holding that the limitation of liability under COGSA extends to the Stevedore.

### C. Classification of the Yacht for Calculating Limitation Amount

The district court erred in ruling that the bill of lading's incorporation of COGSA precluded considering the yacht to be con-

---

3. In admiralty law, a Himalaya Clause is the language used in the contract of carriage to extend the carrier's defenses and limitation of liability under COGSA to agents and independent contractors of the carrier. *See* Note, Carriage of Goods by Sea: Application of the Himalaya Clause to Subdelegees of the Carrier, II *Maritime Lawyer* 91, 111 (1977).

4. The term "demise charterer" refers uniquely to a certain type of vessel chartering. "The most important consequences of the distinction between the demise and the other forms of charters flow from the fact that the demise charterer is looked on as the owner of the vessel *pro hac vice.*" G. Gilmore & C. Black, *The Law of Admiralty* 242 (2d ed.1975).

sidered a "package" for limitation purposes, but that COGSA's customary freight unit limitation applied nonetheless. *See supra* pages 763–764. This conclusion overlooks the Clause Paramount of the bill of lading, which states that "defenses and limitations of [COGSA] shall apply to goods whether carried on or under deck." It also overlooks Paragraph 17 of the bill of lading, which provides in pertinent part:

> In the event of ... damage ... to ... goods exceeding in actual value the equivalent of $500 ... per package, ... the value of the goods shall be deemed to be $500 per package.... *The word "package" shall include ... cargo shipped on a ... cradle....*

(Emphasis added).

Plainly, the bill of lading sets forth a specific definition of "package" that includes the yacht, which was shipped in an on-deck cradle. Only if the incorporation of COGSA preempts inconsistent contractual terms, and therefore absolutely prevents the term "goods" from including cargo shipped on deck, whether or not in a cradle, would we be able to ignore this clear language. As we discuss in section A above, we "reject the view that COGSA preempts all contract terms when its sole force is by incorporation into a contract for foreign transportation." *North River*, 647 F.2d at 989.[5] As did the court in *Pannell*, we conclude

> [t]he parties have defined what "package" means in the bill of lading. We see no reason why this specific definition should not prevail over the general term "package" contained in [COGSA].... Since the shipper could have declared the value of his yacht and had full protection against damage by paying a higher freight rate, we cannot regard the $500 limitation as in the nature of a "trap."

263 F.2d at 498. Inasmuch as we hold that parties to a contract for foreign carriage are free to incorporate COGSA and to include, at the same time, otherwise valid contract terms not in harmony with COGSA, we construe the parties' agreement to be one that defined the yacht as a single COGSA package.

We agree with the reasoning of the district court to the extent it allowed limitation of liability for both the Carrier and Stevedore. We REVERSE the district court's judgment based on the court's findings that the liability of the Carrier and Stevedore was limited to $500 per CFU, and that the yacht comprised 45 CFUs. We REMAND for entry of judgment in the amount of $500, representing the limitation of liability on a single COGSA package. Costs in this court are awarded to the cross-appellants.

---

5. We also reject the Cargo Interests' argument that even if the bill of lading operated to include the yacht in the definition of "package," the fact that the yacht was no longer in the cradle when the damage to it occurred effectively precludes consideration of the yacht as a package. The language of paragraph 17 refers not to cargo "discharged" in a cradle, but rather to cargo "shipped" in a cradle. It is not disputed that the yacht was packaged in a cradle and remained in the cradle throughout the voyage. It is also undisputed that the yacht was discharged into the water at the Cargo Interests' behest. Acceptance of the Cargo Interests' argument would permit a shipper to use its requirement of a special discharge method as a means of opting out of the limitation on liability, rather than paying an *ad valorem* freight rate or otherwise incurring additional charges for the lack of limitation.