**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FEDERAL INSURANCE COMPANY,
*Plaintiff-Appellant,*

v.

UNION PACIFIC RAILROAD COMPANY,
*Defendant-Appellee.*

No. 09-55028

D.C. No.
2:08-cv-03212-
ODW-AJW

OPINION

Appeal from the United States District Court
for the Central District of California
Otis D. Wright, District Judge, Presiding

Argued and Submitted
February 9, 2011—Pasadena, California

Filed July 13, 2011

Before: Alex Kozinski, Chief Judge, Michael D. Hawkins
and Raymond C. Fisher, Circuit Judges.

Opinion by Judge Fisher

## COUNSEL

Dennis A. Cammarano, Cammarano & Sirna, LLP, Long Beach, California, for the plaintiff-appellant.

Leslie G. McMurray, Law Offices of Leslie G. McMurray, Valley Village, California, for the defendant-appellee.

## OPINION

FISHER, Circuit Judge:

This is another maritime case about a train wreck. Federal Insurance Company (FIC) sues for damage to property destroyed during the inland leg of international intermodal carriage. FIC is the subrogee of the shipper, Text International

Pte. Ltd. (Text International), which contracted with an ocean carrier, APL Co. Pte. Ltd. (APL), to ship goods from Singapore to Alabama. APL subcontracted with Union Pacific Railroad Co. (UP) for rail carriage inland from San Pedro, California. UP's train derailed, destroying Text's goods. FIC had insured the goods and paid Text for the loss, subrogating to Text's legal rights against UP and APL.[1] FIC sued UP and lost on summary judgment. We review de novo the grant of summary judgment and affirm.

The district court ruled that a covenant not to sue in the through bill of lading required FIC to sue the carrier, APL, rather than UP, a subcontractor. On appeal, FIC argues that the covenant not to sue is unenforceable. FIC briefed the appeal solely on the theory that the Carmack Amendment, 49 U.S.C. § 11706 (1995), governed the shipment's inland leg and prohibited the covenant not to sue; its opening and reply briefs relied heavily on our court's opinion in *Regal-Beloit Corp. v. Kawasaki Kisen Kaisha Ltd.*, 557 F.3d 985 (9th Cir. 2009).

The Supreme Court subsequently reversed our decision. *See Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 130 S. Ct. 2433, 2444 (2010). FIC concedes that under *Kawasaki* the Carmack Amendment does not apply to this case. Nevertheless, FIC maintains that the covenant not to sue is prohibited by an alternative legal regime — the Harter Act, 46 U.S.C. § 30704 (2006).[2] FIC neglected to make its Harter Act argu-

---

[1] "The equitable doctrine of subrogation passes to the insurer only those rights which the assured has and, if the rights of the assured have been limited by lawful contract, the rights of the insurer are likewise limited." *Atlas Assurance Co. v. Harper, Robinson Shipping Co.*, 508 F.2d 1381, 1389 (9th Cir. 1975).

[2] Congress enacted the Harter Act, 27 Stat. 445 (1893) (codified formerly at 46 U.S.C. app. §§ 190-196 and presently at 46 U.S.C. §§ 30701-30707), to "invalidate bill of lading clauses that relieved vessel owners from liability for damage due to their negligent actions in transporting

ment in its filings in the district court or its initial briefs on appeal.[3]

We consider arguments raised for the first time on appeal only in "exceptional circumstances." *AlohaCare v. Haw. Dep't of Human Servs.*, 572 F.3d 740, 744-45 (9th Cir. 2009) (quotation marks omitted). FIC suggests two exceptional circumstances exist here: (1) *Kawasaki* was a "change in law rais[ing] a new issue while [the] appeal [was] pending," *id.* at 744-45 (quoting *Kimes v. Stone*, 84 F.3d 1121, 1126 (9th Cir. 1996) (internal quotation marks omitted); (2) the issue is "purely one of law," *id.* (same). With respect to the first circumstance, there was no relevant change in the law. FIC "could easily have made" its Harter Act argument before the Supreme Court issued *Kawasaki*. *Turnacliff*, 546 F.3d at 1120. The Harter Act argument is, however, a purely legal issue; that is, it " 'does not affect or rely upon the factual record developed by the parties, and will not prejudice the party against whom it is raised.' " *Dream Palace v. Cnty. of*

---

cargo." *N. River Ins. Co. v. Fed Sea/Fed Pac Line*, 647 F.2d 985, 987 (9th Cir. 1981). But, "[t]o the extent that the Harter Act governed international trade leaving from or entering American ports, it was superseded in 1936 by the Carriage of Goods by Sea Act [(COGSA)], 46 U.S.C. [§ 30701 note]." *Id.* FIC argues that the Harter Act applies because the damage occurred after the goods were discharged from the vessel and COGSA does not apply by its own force at that point. *See id.* at 987 n.3 (citing *Isthmian Steamship Co. v. Cal. Spray Chem. Corp.*, 300 F.2d 41, 46 (9th Cir. 1962) (COGSA notwithstanding, "[t]he Harter Act was preserved for . . . the time prior to loading and after delivery." (citation omitted)).

[3]FIC also argues that the common law would prohibit the covenant not to sue. The Harter Act largely codified the common law, *see United States v. Atlantic Mut. Ins. Co.*, 343 U.S. 236, 239-40 (1952), and FIC has not identified a material difference between the two in this case, so we treat the claims as one. FIC further argues that it can claim damages under UP's Master Intermodal Transportation Agreement, a bill of lading issued by UP. FIC concedes remand would be required to develop the factual record before analyzing this claim, so it is waived. *See Turnacliff v. Westly*, 546 F.3d 1113, 1120 (9th Cir. 2008).

*Maricopa*, 384 F.3d 990, 1005 (9th Cir. 2004) (quoting *Janes v. Wal-Mart Stores, Inc.*, 279 F.3d 883, 888 n.4 (9th Cir. 2002)). Whether the covenant not to sue is enforceable turns on two issues we can resolve based on the undisputed facts: First, what legal regime applies to the shipment's inland leg under the through bill of lading? *See L.K. Comstock & Co. v. United Eng'rs & Constructors Inc.*, 880 F.2d 219, 221 (9th Cir. 1989) (explaining that interpretation of a contract without reliance on extrinsic evidence is a question of law that we review de novo). Second, does the applicable legal regime prohibit the covenant not to sue? We agree with UP that the Harter Act does not apply and the covenant not to sue is enforceable.

## I.

**[1]** The through bill of lading contained a paramount clause specifying the applicable legal regime.[4] The paramount clause made the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 30701 note, applicable "[f]rom loading of the Goods onto the Vessel until discharge of the Goods from the Vessel," and the Hague Rules applicable "[p]rior to loading onto the Vessel and after discharge from the Vessel."[5] Because the

---

[4]A paramount clause, or clause paramount, is a commonly accepted device that "identifies the law that will govern the rights and liabilities of all parties to the bill of lading." *Sompo Japan Ins. Co. of Am. v. Union Pac. R.R. Co.*, 456 F.3d 54, 56 (2d Cir. 2006), *abrogated on other grounds by Kawasaki*, 130 S. Ct. 2433. We have routinely enforced paramount clauses in similar situations. *See Sea-Land Serv., Inc. v. Lozen Int'l., LLC.*, 285 F.3d 808, 816-17 (9th Cir. 2002).

[5]The Hague Rules are formally known as the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading, August 25, 1924, 51 Stat. 233, T.S. No. 931. The Hague Rules were promulgated at the Brussels Convention of August 25, 1924, which was convened to standardize rules governing ocean carriers' liability for negligence. The United States codified the Hague Rules by enacting the Carriage of Goods by Sea Act, 49 Stat. 1207 (1936) (46 U.S.C. §§ 1300-15). See *Sunkist Growers, Inc. v. Adelaide Shipping Lines, Ltd.*, 603 F.2d 1327, 1333 (9th Cir. 1979). In 2006, Congress reorganized Title 46 but did not recodify COGSA, which currently appears as a note to 46 U.S.C. § 30701. *See* Pub. L. No. 109-304, 120 Stat. 1485 (2006).

damage here occurred after discharge from the vessel, the Hague Rules plainly apply.

[2] The Hague Rules are "virtually identical" to COGSA for purposes of this case, so we apply our precedent interpreting COGSA to the paramount clause's reference to the Hague Rules. *In re Damodar Bulk Carriers, Ltd.*, 903 F.2d 675, 681 (9th Cir. 1990) (finding no error where the district court applied COGSA to a contract referring to the Hague Rules). *Compare* COGSA § 7, 46 U.S.C. § 30701 note, *with* Hague Rules art. 7, 51 Stat. 233. As a general rule, the Harter Act, rather than COGSA, applies to goods before delivery to and after discharge from a vessel. *See N. River Ins. Co. v. Fed Sea/Fed Pac Line*, 647 F.2d 985, 987 n.3 (9th Cir. 1981). The Harter Act, however, can be displaced by a contract extending COGSA to the transport of goods before delivery to and after discharge from a vessel. *See Starrag v. Maersk, Inc.*, 486 F.3d 607, 615 (9th Cir. 2007) ("[W]here the parties contractually extend the COGSA to cover the damage, the Harter Act does not apply."); *Sea-Land*, 285 F.3d at 816-17 ("[B]ecause COGSA is incorporated by contract into [the] bills of lading, " 'it, rather than the Harter Act, controls.' " (quoting *N. River*, 647 F.2d at 987)). By the same reasoning, the paramount clause here validly extended the Hague Rules to displace the Harter Act. We enforce the paramount clause and analyze the covenant not to sue under the Hague Rules and COGSA.

## II

[3] The through bill of lading's covenant not to sue is enforceable because FIC can still seek a full recovery from the carrier, APL. The covenant states:

4. SUB-CONTRACTING

. . .

ii) The Merchant undertakes that no claim or allegation shall be made against any Person whomsoever

by whom the Carriage is procured, performed or undertaken, whether directly or indirectly (including any independent contractors and any Sub-Contractors of the Carrier and their servants or agents), other than the Carrier which imposes or attempts to impose upon any such Person, or any Vessel owned by any such Person, any liability whatsoever in connection with the Goods or the Carriage of the Goods, whether or not arising out of negligence on the part of such Person . . . . [E]very such person shall have the benefit of every right, defense, limitation and liberty of whatsoever nature herein contained or otherwise available to the Carrier as if such provisions were expressly for its benefit . . . .

The covenant not to sue forces the "Merchant" — here, Text International — to bring all suits against the "Carrier" — here, APL — even for damage caused by a "Sub-Contractor" like UP. This arrangement is lawful under the Hague Rules, which are again functionally identical to COGSA. *Compare* COGSA § 3(8), 46 U.S.C. § 30701 note, *with* Hague Rules, Art. 3(8), 51 Stat. 233.

**[4]** COGSA prohibits contracts that lessen or relieve the carrier of liability "arising from negligence, fault, or failure in the duties and obligations provided in this section." COGSA § 3(8), 46 U.S.C. § 30701 note. The Supreme Court has distinguished between impermissible contracts that reduce the carrier's obligations and enforceable contracts that affect only the "mechanisms" of enforcing a shipper's rights. *See Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 535 (1995). COGSA requires that

[t]he liability that may not be lessened is "liability for loss or damage . . . arising from negligence, fault, or failure in the duties or obligations provided in this section." The statute thus addresses the lessening of

the specific liability imposed by the Act, without addressing the separate question of the means and costs of enforcing that liability.

*Id.* at 534 (quoting COGSA § 3(8), 46 U.S.C. § 30701 note) (omission in original). The requirement that all suits be brought against APL is an enforcement mechanism rather than a reduction of " 'the carrier's obligations to the cargo owner below what COGSA guarantees.' " *Fireman's Fund Ins. Co. v. M/V DSR Atlantic*, 131 F.3d 1336, 1339 (9th Cir. 1997) (quoting *Sky Reefer*, 515 U.S. at 538, and applying *Sky Reefer* to a forum selection clause).

**[5]** It makes no difference that the covenant not to sue might make it more difficult as a practical matter for FIC to recover damages. *Sky Reefer* expressly held that a contract clause does not contravene COGSA merely because it increases the "transaction cost of litigation." *See* 515 U.S. at 536. FIC may have some unarticulated, practical preference for suing UP rather than APL, but it disavowed that preference when it agreed to the covenant not to sue.

**[6]** We therefore hold that the Hague Rules and COGSA permit a carrier to accept exclusive liability for the negligence of its subcontractors.[6] *Cf. Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 35 (2004) (validating under COGSA an ocean carrier's efforts to limit the liability of sub-contractors in part because the shipper "retain[ed] the option to sue . . . the carrier[ ] for any loss that exceeds the liability limitation").

---

[6]Several district courts have already reached this conclusion. *See St. Paul Travelers Ins. Co. v. M/V Madame Butterfly*, 700 F. Supp. 2d 496, 503 (S.D.N.Y. 2010); *see also Mattel, Inc. v. BNSF Ry. Co.*, 2011 WL 90164, at *4 (C.D. Cal. Jan. 3, 2011); *Ltd. Brands, Inc. v. F.C. (Flying Cargo) Int'l Transp. Ltd.*, 2006 WL 783459, at *8 (S.D. Ohio Mar. 27, 2006); *Allianz CP Gen. Ins. Co. v. Blue Anchor Line*, 2004 WL 1048228, at *6 (S.D.N.Y. May 7, 2004).

\*\*\*

**[7]** The district court did not err by enforcing the covenant not to sue and granting summary judgment to UP; the requirement that FIC sue APL directly is valid under the Hague Rules and COGSA.

**AFFIRMED.**