## ST. PAUL FIRE & MARINE INSURANCE COMPANY, Plaintiff,

v.

## SEA–LAND SERVICE, INC., Defendant.

### No. 89 Civ. 5444 (RPP).

United States District Court, S.D. New York.

Sept. 13, 1990.

Badiak, Will & Maloof, New York City by Alfred J. Will, for plaintiff.

DeOrchis & Partners, New York City by M.E. DeOrchis, for defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Defendant Sea–Land Service, Inc. ("Sea–Land") moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure or, in the alternative, for a $500 per container limitation on its liability in this maritime loss action.[1] Defendant's motion for summary judgment is based on the fact, agreed upon at oral argument, that the loss occurred after the container was discharged from the vessel but during the period it was in the carrier's control before being placed in the Customs House for receipt by the consignee.

By opinion and order dated April 24, 1990, 735 F.Supp. 129, this Court decided a motion for partial summary judgment against defendant. In that motion, defendant sought to invoke a clause of its bill of lading for carriage of goods from Port

Everglades, Florida to Rio Haina, Dominican Republic, which limited defendant's liability to $500 for a single container said to contain 150 packages freight all kinds. The Court held that the clause of limitation was inconsistent with the $500 per package limitation which applied *ex proprio vigore* under the United States Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.App. § 1300 et seq., and that defendant was not relieved "of liability it would otherwise have under COGSA," *i.e.*, the $500 per package or per customary freight unit limitation as stated in the statute.

Defendant in this motion relies on the fact that "the loss occurred after discharge from the vessel while the container was stored for a week in its terminal at Rio Haina before it was moved to the Customs Warehouse for unstuffing by the consignee." Documentary evidence establishes that the seal on the container was intact when the container was discharged from the vessel at Rio Haina. The evidence also is undisputed that upon delivery of the container at the Customs House, the seal was missing and had been replaced by a thick padlock which had to be broken open with a hammer.

Defendant argues that COGSA specifically states that the term "carriage of goods covers the period from the time the goods are loaded on to the time they are discharged from the ship," 46 U.S.C.App. § 1301(e) and that, since the missing cargo must have been stolen while the goods were in the defendant's custody in the yard where containers are stored prior to being taken to the Customs warehouse for unstuffing, the bill of lading clause of limitation of liability to $500 per container rather than the COGSA $500 per package limitation governs.

Defendant's position is that COGSA does not apply *ex proprio vigore* once the goods have been discharged. It cites *Pannell v. United States Lines Co.*, 263 F.2d 497 (2d Cir.1959), *Smythgreyhound v. M/V Eury-*

---

1. Plaintiff moved for an order pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure for voluntary dismissal of all actions of the complaint. Defendant opposed this motion on the ground its planned appeal from an April 24, 1990 decision of this Court would be prevented. Prior to argument of this motion, plaintiff withdrew its motion for a voluntary dismissal.

*genes,* 666 F.2d 746 (2d Cir.1981), and *Institute of London Underwriters v. Sea–Land Service, Inc.,* 881 F.2d 761 (9th Cir.1989).

The plaintiff correctly distinguishes *Pannell* on the grounds it dealt with on-deck cargo and, therefore, COGSA did not apply *ex proprio vigore,* 46 U.S.C.App. § 1301(c). It distinguishes *Smythgreyhound* on the grounds that there, too, COGSA, did not apply *ex proprio vigore* since the shipment was not to or from the United States. Under these cases, the terms of COGSA, although incorporated into the bill of lading, had no greater effect than other bill of lading provisions.

The Court declines to apply *Institute of London Underwriters,* a Ninth Circuit case in which COGSA did not apply *ex proprio vigore.* Furthermore, *London Underwriters* is not consistent with precedent in this Circuit and the bill of lading at issue did not contain the Clause Paramount found here.

In this case, the typed description on the face of the bill of lading specified one 40 ft. container, No. SEAU–465911–3, Seal No. OOOO613, said to contain 150 packages freight all kinds. The terms of the bill of lading printed on its reverse side contained two provisions leading to this dispute, clauses 1 and 17.

Provision 1, entitled Clause Paramount, reads as follows:

This bill of lading shall have effect subject to all the provisions of the Carriage of Goods by Sea Act of the United States of America, approved April 16, 1936, as if set forth herein. The defenses and limitations of said Act shall apply to goods whether carried on or under the deck, to carriage of goods between U.S. ports, or between non-U.S. ports, before the goods are loaded on and after they are discharged from the vessel, and throughout the entire time the goods are in the actual custody of Carrier, whether acting as carrier, bailee or stevedore.

If this bill of lading is issued in or the goods are delivered to a locality where there is in force a compulsorily applicable Carriage of Goods by Sea Act ordinance or statute similar to the International Convention for the Unification of Certain Rules relating to Bills of Lading dated at Brussels, August 25, 1924, then it is subject to such Act, ordinance or statute before the goods are loaded on and after they are discharged from the vessel and throughout the entire time the goods are in the actual custody of Carrier, whether acting as carrier, bailee or stevedore.

Carrier shall be entitled to the full benefit of all rights and immunity under and all limitations of or exemptions from liability contained in any law of the United States or any other place whose law shall be compulsorily applicable. If any term of this bill of lading be repugnant to the Carriage of Goods by Sea Act of the United States or any other law compulsorily applicable such term only shall be void to that extent but no further.

This bill of lading shall be construed and the rights of the parties hereunder determined according to the laws of the United States.

Provision 17, entitled Valuation, reads as follows:

In the event of loss, damage or delay to or in connection with goods exceeding in actual value the equivalent of $500 lawful money of the United States per package, or in case of goods not shipped in packages, per shipping unit, the value of the goods shall be deemed to be $500 per package or unit, unless the nature and higher value of goods have been declared by the shipper herein and extra charged paid as provided in Carrier's tariff. However, Carrier's liability shall not exceed the invoice value of the goods. *The word "package" shall include a container used to ship household goods or Freight All Kinds shipped under lump sum tariff,* a liquid tank or dry bulk container, van or trailer, and cargo shipped on a skid, cradle, pallet or unitized load, group or assemblage. When the U.S. Carriage of Goods by Sea Act does not apply of its own force to goods not shipped in packages, the $500 limitation shall apply to each shipping or customary freight unit or piece, provided always that any compulsorily applicable

limitation shall apply in place of the $500 limitation. (emphasis added).

The provisions of the Clause Paramount make it clear that COGSA was intended to apply to the shipment and that this provision is a controlling provision. The Clause Paramount also makes clear that the COGSA limitations are to apply as long as the goods are in the carrier's actual custody, whether acting as carrier, bailee or stevedore. In *Leathers Best, Inc. v. S.S. Mormaclynx, Inc.,* 451 F.2d 800 (2d Cir.1971), the Court found that where COGSA applied *ex proprio vigore,* the COGSA limitations still applied to goods in the carrier's possession after discharge, even though there was no bill of lading provision to that effect as there is here. *See also Binladen BSB Landscaping v. M.V. Nedlloyd Rotterdam,* 759 F.2d 1006 (2d Cir.1985); *David Crystal, Inc. v. Cunard Steam–Ship Co.,* 339 F.2d 295 (2d Cir.1964).

For the above reasons, defendant's motion is denied. The Court notes with some trepidation, however, that it is its view that this Circuit's determination that the $500 per package or per customary freight unit limitation should not apply to a container said to contain packages should be re-examined. Cases seeking to apply the $500 COGSA limitation to containers pursuant to bills of lading are an all too common experience in this District, particularly because carriers have drafted bills of lading with all sorts of terms relating to its applicability to container shipments and because of the variety of language and circumstances applying to the issuance of bills of lading. Despite this Circuit's expressed hopes that the diplomatic discussion commenced twenty years ago would result in a resolution of the issue, they have been fruitless. Furthermore, for reasons of reductions of cost and prevention of theft or damage, containers have become a "customary freight unit," if not the customary freight unit.

From this Court's viewpoint, the carrier should not rely on language seeking to apply the $500 per package COGSA limitation to containers if the carrier packs and seals the container. On the other hand, the $500 per container limitation should apply if the shipper, like the NVOCC (non vessel owning cargo carrier) here, packs the container. A distinction on this basis would eliminate fraudulent claims, would reduce litigation costs, would allow shippers of goods to select carriers offering the lowest rates of carriage and encourage shippers of high value goods to pack carefully and insure accordingly. These litigations are, in truth, between the insurers of the shipper and the insurers of the carriers. *Rosenbruch v. American Export Isbrandtsen Lines, Inc.,* 357 F.Supp. 982 (S.D.N.Y. 1973). Instead the district courts are attempting on motion practice or stipulated facts to make innumerable distinctions of fact based on language of the bills of lading in an attempt to achieve what may, or may not be, a just result.

MOTION DENIED.

IT IS SO ORDERED.